

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 15, 2020**

_____

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 12-43804-ELM |
| REGINA NACHAEL HOWELL FOSTER, | § | |
| | § | Chapter 7 |
|     Debtor. | § | |
| | § | |
| REGINA NACHAEL HOWELL FOSTER, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | Adversary No. 19-04131 |
| | § | |
| AREYA HOLDER, *et al*., | § | |
| | § | |
|     Defendants. | § | |

## <u>MEMORANDUM OPINION</u>
(Re: Docket Nos. 10 and 12)

Before the Court in the above-captioned removed adversary proceeding are two motions for remand filed by Plaintiff Regina Nachael Howell Foster (the "**Debtor**"), the chapter 7 debtor in Case No. 12-43804 (the "**Bankruptcy Case**"): (1) a *Motion to Remand: Untimely Removal* [Docket No. 12] (the "**Timeliness Motion**"); and (2) a *Motion to Remand: Lack of Subject Matter Jurisdiction* [Docket No. 10] (the "**Jurisdictional Motion**" and together with the Timeliness

Motion, the "**Motions**"). Pursuant to the Timeliness Motion, the Debtor asserts that the case should be remanded to Texas state court based upon the alleged failure of the removing parties – Defendants Areya Holder n/k/a Areya Holder Aurzada (the "**Trustee**"), Singer & Levick, P.C. ("**SLPC**"), Todd A. Hoodenpyle ("**Hoodenpyle**") and Michelle E. Shriro ("**Shriro**" and together with the Trustee, SLPC and Hoodenpyle, the "**Removing Defendants**") – to file their Notice of Removal by the deadline imposed by Bankruptcy Rule 9027(a)(3). Pursuant to the Jurisdictional Motion, the Debtor asserts that the case should be remanded to Texas state court because the Court allegedly lacks federal-question subject matter jurisdiction. Alternatively, the Debtor asserts that the Court must abstain pursuant to 28 U.S.C. § 1334(c)(2), or should abstain pursuant to 28 U.S.C. § 1334(c)(1), from exercising jurisdiction over the claims at issue in the case even if the Court has subject matter jurisdiction.

The Removing Defendants have timely responded in opposition to both Motions.[1] First, in relation to the Timeliness Motion, the Removing Defendants assert that they filed their Notice of Removal within 30 days of their receipt of the Debtor's complaint as required by Bankruptcy Rule 9027(a)(3). Second, in relation to the Jurisdictional Motion, the Removing Defendants assert that the Court has subject matter jurisdiction of the case pursuant to the bankruptcy jurisdictional provisions of 28 U.S.C. §§ 1334 and 157 (as opposed to the federal-question jurisdictional provisions of 28 U.S.C. § 1331), that mandatory abstention is not required, and that factors relevant to permissive abstention weigh in favor of the Court's refusal to abstain from exercising jurisdiction. The Debtor has filed a reply to each of the responses.[2]

---

[1] *See* Docket Nos. 22 and 23.

[2] *See* Docket Nos. 24 and 25.

At a January 15, 2020 hearing in the adversary proceeding, the Debtor, without opposition from the Removing Defendants, requested that the Motions be considered on the parties' submissions alone without an evidentiary hearing or oral argument. The Court granted the unopposed request and, hence, the parties have waived their right to have an evidentiary hearing and oral argument on the Motions.

Having now considered the Motions, the responses in opposition and the replies thereto, for the reasons set forth below the Court will deny the Timeliness Motion and grant in part, and deny in part, the Jurisdictional Motion.

### *BACKGROUND*

This removed action presents but the latest chapter in a nearly decade-long saga of challenges lodged by the Debtor to the Trustee's administration of the Bankruptcy Case and the Debtor's bankruptcy estate. To put the current litigation and Motions in proper context, it is helpful to provide a recap of the events leading up to the current litigation.

### A.      *The Debtor's Initiation of the Bankruptcy Case and a Separate Divorce Proceeding*

On July 2, 2012, the Debtor filed her voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case. The Trustee was appointed as trustee of the Debtor's chapter 7 bankruptcy estate.

Four days after filing for bankruptcy protection, the Debtor initiated a divorce proceeding (the "**Divorce Action**") against her husband Carlos Foster ("**Foster**") under Cause No. 322-518571-12 in Texas state court (the "**Family Court**").[3] In the Divorce Action, the Debtor "claimed

---

[3] *See* Bankruptcy Case Docket No. 41 (amended schedule of personal property, identifying Divorce Action in ¶ 17); Bankruptcy Case Docket No. 83 (discussing initiation of Divorce Action in ¶ 2). Inasmuch as the Divorce Action ended up being transferred on one or more occasions from one family judge to another family judge during its pendency, the Court's use of the term "Family Court" herein is intended to refer to the particular family judge and corresponding Judicial District Court of Tarrant County, Texas, in which the Divorce Action was pending at any given point in time referenced herein.

an interest in three parcels of real property … recognized as important assets in her bankruptcy."[4] In follow-up to that assertion, on October 12, 2012, the Debtor filed amended schedules in her Bankruptcy Case to identify her claimed community property interest in these three parcels of real property, described as: (1) commercial real property located at 4716 E. Lancaster Avenue, Fort Worth, Texas 76103 (the "**Lancaster Property**"); (2) commercial real property located at 421 S. Edgewood Terrace, Fort Worth, Texas 76103 (the "**Edgewood Property**" and together with the Lancaster Property, the "**Commercial Properties**"); and (3) rental real property located at 936 E. Powell Avenue, Fort Worth, Texas 76103 (the "**Powell Property**" and together with the Commercial Properties, the "**Properties**").[5]

At the same time that the Debtor amended her schedule of assets to reflect her asserted community property interest in the Properties, the Debtor also amended her schedule of claimed exemptions.[6] Of significance, nowhere within the amended exemptions schedule did she list any of the Properties as exempt property, and at no time thereafter did she ever assert that any of the Properties constituted exempt property. Thus, because the amended schedules facially evidenced that the Properties, or at least the Debtor's asserted interest in the Properties, constituted non-exempt property of the bankruptcy estate subject to administration by the Trustee, the Trustee began to investigate the background of the Properties.

Ultimately, the Trustee learned that the Debtor's husband, Foster, was claiming the Properties as his separate property based upon the fact that they had been acquired in the name of 1st Aid Accident Injury & Pain Center, Inc. ("**First Aid**"), a corporation that Foster had organized as his wholly-owned business prior to his marriage to the Debtor. With respect to the Debtor's

---

[4] Bankruptcy Case Docket No. 83 (¶ 2).

[5] *See* Bankruptcy Case Docket No. 32 (Schedule A).

[6] *See id*. (Schedule C).

claimed interest in the Properties, the Trustee learned that the Debtor was basing her claim of ownership on arguments of First Aid being the mere alter ego of Foster warranting a piercing of the corporate veil of First Aid to make the Properties part of the community property estate.[7]

**B.      *The Trustee Retains SLPC as Special Counsel to Assist in Analyzing and Addressing Matters Involving the Properties***

Given the complexities associated with the competing claims of ownership to the Properties, the Trustee, with Court approval, engaged SLPC as special counsel to assist the Trustee in further investigating and analyzing the competing claims of ownership and in otherwise addressing matters involving the Properties.[8]   Hoodenpyle and Shriro are attorneys with SLPC who worked on the engagement.

Following further investigation and analysis, the Trustee discovered, among other things, that First Aid had forfeited its corporate charter roughly eight years prior to the bankruptcy filing – in or about July 2004.  Thus, concluding that the forfeiture resulted in the Debtor and Foster each owning and controlling an undivided one-half interest in the Properties because the Properties were acquired in the name of First Aid during the marriage, the Trustee concluded that she had the responsibility and authority to administer the Properties as property of the bankruptcy estate.[9] Accordingly, with the assistance of counsel, she began to explore options with respect to monetizing the value of the estate's interest in the Properties.

Following the Trustee's receipt of an offer from an entity affiliated with Foster's mother to purchase the bankruptcy estate's interest in the Properties, the Trustee filed a motion to sell the

---

[7] *See, e.g.*, Bankruptcy Case Docket No. 69 (¶ 3).

[8] *See* Bankruptcy Case Docket No. 57 (order approving engagement).

[9] *See, e.g.*, Bankruptcy Case Docket No. 79 (¶ 28).

Properties.[10]  The Debtor objected to the motion, asserting, among other things, that the disputed ownership rights to the Properties had not yet been determined, that a determination with respect to the division of the marital estate had not yet been made in the Divorce Action, and that approval of the sale to an entity affiliated with Foster's mother was unwarranted given that the proposed sales price was allegedly significantly less than the previously listed valuation of the Properties.[11]

Following a hearing on the motion, the Court declined to approve the sale for two reasons. First, the Court was concerned that negotiations with respect to the terms of the sale had been predicated on the assumption that the estate held no more than a 50% interest in the Properties, whereas the division of the marital estate in the Divorce Action could conceivably lead to the estate obtaining a greater than 50% interest. Second, the Court was concerned that approval of the sale could have the unintended consequence of effecting a *de facto* division of the marital estate without the involvement of the Family Court.[12]

### C.    The Trustee Initiates Litigation Against Foster and First Aid to Determine Ownership and Intervenes in the Divorce Action

To resolve the ownership dispute with Foster, on May 22, 2014, the Trustee initiated litigation against Foster and First Aid under Adversary Proceeding No. 14-04054 to seek the Court's entry of judgment declaring the Properties to constitute property of the bankruptcy estate and ordering turnover of the Properties to the Trustee (the "**Property Ownership Lawsuit**").[13]

---

[10] *See* Bankruptcy Case Docket No. 68.

[11] *See* Bankruptcy Case Docket No. 70.

[12] *See* Bankruptcy Case Docket No. 84 (order denying sale motion).  The Trustee's subsequent request for reconsideration of the order denying approval of the sale was also denied.  *See* Bankruptcy Case Docket No. 104.

[13] *See* Property Ownership Lawsuit Docket No. 1.  Prior to the initiation of the Property Ownership Lawsuit, a flurry of additional activity took place in the Bankruptcy Case.  In December 2013, the Debtor filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) to, among other things, allow the Family Court to determine all issues of ownership, apportionment and division of the Properties.  *See* Bankruptcy Case Docket No. 83.  The Trustee responded in opposition to the motion, asserting that disputes with respect to what interests in property constitute property of the *estate* and the distribution of *estate* property are matters be decided by the bankruptcy court alone.  *See* Bankruptcy Case Docket No. 86.  Given the expansive scope of the requested relief in the lift stay motion and the stage of the

Foster and First Aid filed a joint answer in opposition.[14] Upon the commencement of the Property Ownership Lawsuit, notice of the action and of the Trustee's complaint was provided to, among others, the Debtor by and through her then-counsel of record.[15]

Separately, the Trustee also filed a plea in intervention in the Divorce Action to put the Family Court on notice of the proceedings in the Bankruptcy Case and to protect what the Trustee believed to be the bankruptcy estate's interest in the Properties, noting in the plea that the bankruptcy estate includes any community property of the Debtor and Foster under the Debtor's joint management and control as of the date of the bankruptcy filing pursuant to 11 U.S.C. § 541(a)(2)(A).[16]

Approximately five months into the litigation in the Property Ownership Lawsuit, the Trustee reached an agreement with Foster for resolution of the lawsuit – or so she thought. On October 24, 2014, the Trustee filed a motion in the Bankruptcy Case for approval of the settlement.[17] Under the terms of the proposed compromise, Foster would transfer all of his alleged right, title and interest in the Commercial Properties to the bankruptcy estate in exchange for the

---

proceedings in the Bankruptcy Case at that point in time, the Court entered an order denying the motion. *See* Bankruptcy Case Docket No. 105. The Debtor then appealed the order on behalf of her children, as their next friend, which was subsequently dismissed as untimely. *See* Bankruptcy Case Docket Nos. 111 and 120. Thereafter, the Debtor filed a motion on behalf of her children, as their next friend, for the District Court's withdrawal of the reference. *See* Bankruptcy Case Docket No. 123. Following the issuance of a report and recommendation to the District Court recommending against the withdrawal, the District Court entered an order denying the motion. *See* Bankruptcy Case Docket Nos. 146 and 149.

[14] *See* Property Ownership Lawsuit Docket Nos. 11 and 18.

[15] *See* Bankruptcy Case Docket No. 151 (reflecting initiation of Property Ownership Lawsuit and including a link to the Trustee's original complaint; noticed via the Court's ECF facilities to all registered ECF users as of 5/22/2014, including the Debtor's then-counsel of record in the Bankruptcy Case); *see also* Bankruptcy Case Docket No. 81 (notice of appearance filed by counsel for the Debtor on 12/2/2013, thereby registering counsel for ECF notice in the case); Bankruptcy Case Docket No. 195 (Debtor's counsel's motion to withdraw, not filed until 11/13/2014).

[16] *See* Bankruptcy Case Docket No. 161, Exh. C (copy of plea in intervention); *see also* 11 U.S.C. § 541(a)(2)(A) (providing that property of the estate includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is … under the sole, equal, or joint management and control of the debtor").

[17] *See* Bankruptcy Case Docket No. 167.

Trustee's transfer and conveyance of all of the bankruptcy estate's alleged right, title and interest in the Powell Property to Foster, and the parties would exchange releases (excluding, for the avoidance of doubt, claims by the Debtor against Foster for spousal support, child support and alimony).[18] The compromise would also resolve a corollary lawsuit (Adversary Proceeding No. 14-04068) filed by the Trustee against Foster for the avoidance and recovery of rental payments generated by the Properties (the "**Foster Avoidance Lawsuit**").[19]

The Debtor filed an objection to the motion to compromise on behalf of herself and her children, as their next friend.[20] Pursuant to the objection, the Debtor, in essence, asserted that because Foster had been claiming the Properties as his separate property, which the Debtor construed as indirectly also constituting a claim to sole management and control of the Properties to the extent that they might be determined to be community property instead of separate property, then such claims called into question whether the bankruptcy estate actually had an interest in the Properties under section 541(a)(2) of the Bankruptcy Code.[21] And, thus, because these ownership

---

[18] *See id*. (¶ 4).

[19] *See* Foster Avoidance Lawsuit Docket No. 1 (copy of complaint). Upon the commencement of the Foster Avoidance Lawsuit, notice of the action and of the Trustee's complaint was similarly provided to, among others, the Debtor by and through her then-counsel of record. *See* Bankruptcy Case Docket No. 153 (reflecting initiation of Foster Avoidance Lawsuit on 7/2/2014 and including a link to the Trustee's original complaint; noticed via the Court's ECF facilities to all registered ECF users as of 7/2/2014, including the Debtor's then-counsel of record in the Bankruptcy Case).

[20] *See* Bankruptcy Case Docket No. 203. With respect to the standing of the Foster children to object, on June 12, 2013, the Debtor filed a proof of claim in the Bankruptcy Case (Claim No. 8) on behalf of her children, as their next friend, to assert a claim by the children against *herself* for breach of fiduciary duty and failure to pay property taxes. On November 25, 2014, the Trustee filed an objection to the claim. *See* Bankruptcy Case Docket No. 206. On December 29, 2014, the Debtor filed a response on behalf of the children. *See* Bankruptcy Case Docket No. 236. Following an evidentiary hearing on the objection on January 5, 2015, the Court entered an order sustaining the objection and disallowing the claim in full. *See* Bankruptcy Case Docket No. 334. On appeal to the District Court, the order was affirmed. *See* Bankruptcy Case Docket Nos. 382 and 383. On further appeal to the Fifth Circuit, the Fifth Circuit dismissed the appeal as frivolous. *See* Bankruptcy Case Docket Nos. 390 and 391.

[21] *See* 11 U.S.C. § 541(a)(2)(A) (providing that in the case of community property owned by a debtor and the non-debtor spouse of such debtor, the debtor's estate includes, among other things, all such community property that is under the sole, equal, or joint management and control of the debtor – omitting any reference to community property under the sole management and control of the non-debtor spouse).

issues had not yet been determined, and because a division of the martial estate had not yet occurred in the Divorce Action, the Debtor argued that the settlement constituted a "collusive," "illusory" agreement designed to deprive the Debtor and her children of their rights under applicable Texas marital laws. The Debtor additionally questioned the authenticity of Foster's signature to the settlement agreement, thereby calling into question whether Foster had even actually agreed to it.[22]

Following a hearing on the motion, the Court declined to approve the compromise based upon the lack of evidence of Foster's agreement to the settlement.[23] While not the basis for denial of the motion, the Court also voiced concerns with respect to the continuing dispute as to the character of the Properties, the shifting positions being taken by the Debtor and Foster in proceedings, and the overlay and impact of the pending Divorce Action to the division of the marital estate. Based upon such concerns and the Trustee's report that the costs of administering the estate were being exponentially driven up by the shifting, litigious positions being taken by the Debtor and Foster, the Court *sua sponte* issued an order of abstention in the Property Ownership Lawsuit on January 20, 2015.[24] Pursuant to the abstention order, the Court abstained in favor of the Family Court with respect to the determination of (1) whether the Properties were Foster's separate property or instead the community property of the Debtor and Foster, (2) if community property, whether the Properties were under the sole management and control of Foster or subject

---

[22] In this regard, the Trustee filed the motion to compromise after receiving a copy of the settlement agreement signed by Foster's counsel in the name of Foster, coupled with Foster's counsel's assurance that it would be followed up with a copy of the agreement actually signed by Foster. After Foster's counsel failed to timely deliver on such assurance, the Trustee disclosed the lack of an originally signed agreement to the Court. This resulted in the Court's issuance of a show cause order to Foster and his counsel. *See* Bankruptcy Case Docket No. 181. Ultimately, Foster and his counsel failed to produce a copy of the agreement signed by Foster, thereby calling into question whether there had ever been an actual meeting of the minds between the parties.

[23] *See* Bankruptcy Case Docket No. 306.

[24] A similar order of abstention was also entered in the Foster Avoidance Lawsuit. *See* Foster Avoidance Lawsuit Docket No. 10.

to joint management and control by both Foster and the Debtor, and (3) the fair and equitable division of the Properties under the provisions of the Texas Family Code taking into account such determinations; provided, however, that the Court retained authority over the distribution of any property constituting property of the estate and the right to approve any compromise that might be reached between the Debtor, Foster and First Aid in relation to such matters.[25]   The order also modified the automatic stay of 11 U.S.C. § 362(a) to enable the Family Court to make such determinations.[26]

Notably, the order did <u>not</u> preclude the Trustee from making an appearance in the Divorce Action.  To the extent that the Trustee deemed it necessary or advisable to appear in the action to protect or preserve what the Trustee reasonably believed to be property of the bankruptcy estate, such action was permissible and within the scope of statutory authority provided to the Trustee.[27]

### D.       The Debtor Requests Removal of the Trustee

On October 15, 2014, following the Trustee's intervention in the Divorce Action, the Debtor filed a motion on behalf of her children, as their next friend, to remove the Trustee as the chapter 7 trustee in the Bankruptcy Case.[28]   Pointing to the Trustee's prior request to sell the Properties, the initiation of the Property Ownership Lawsuit and the Foster Avoidance Lawsuit, the Trustee's intervention in the Divorce Action, and the fact that the Trustee had been in extended negotiations with Foster with respect to ownership of the Properties, the Debtor (on behalf of her children) asserted that cause existed for removal of the Trustee because such conduct allegedly evidenced a conspiracy between the Trustee and Foster to defraud the community estate, to defeat

---

[25] *See* Property Ownership Lawsuit Docket No. 23.

[26] *See id.*

[27] *See* 11 U.S.C. §§ 323, 704(a)(1).

[28] *See* Bankruptcy Case Docket No. 161.

a just and equitable division of the marital estate, and to deprive the rights of the Foster children under the Texas Family Code. Additionally, the Debtor (on behalf of her children) asserted that the Trustee was incurring unnecessary administrative costs to the detriment of creditors. Curiously, despite complaints with respect to the Trustee's initiation of the Property Ownership Lawsuit and Foster Avoidance Lawsuit and the estate's incurrence of administrative expenses, the Debtor (on behalf of her children) also asserted that the Trustee was knowingly conspiring with Foster to allow all rental income from the Properties to be "stolen" by Foster while expenses of the Properties were going unpaid.

Following the Trustee's filing of a response in opposition to the motion[29] and the filing of a reply by the Debtor (this time both individually and on behalf of her children),[30] the Court conducted an evidentiary hearing. At the conclusion of the hearing, the Court issued an oral ruling, determining that the motion should be denied for lack of merit. Based upon the ruling, on December 23, 2014, the Court entered an order denying the motion (the "**Order Denying Removal of the Trustee**").[31] Both the Debtor, individually, and the Debtor, on behalf of her children as their next friend, filed appeals from the order.[32] The appeals were subsequently consolidated and dismissed by the District Court.[33] On further appeal to the Fifth Circuit, the appeal was dismissed by the Fifth Circuit as frivolous.[34]

---

[29] *See* Bankruptcy Case Docket No. 186.

[30] *See* Bankruptcy Case Docket No. 194. In the reply, the Debtor, individually and on behalf of her children, raised even more serious allegations, claiming that the Trustee had intentionally misled the Court, asserted frivolous claims, and obstructed justice, warranting the issuance of sanctions in addition to removal.

[31] *See* Bankruptcy Case Docket No. 226.

[32] *See* Bankruptcy Case Docket Nos. 234 and 235.

[33] *See* Bankruptcy Case Docket Nos. 369-371.

[34] *See* Bankruptcy Case Docket Nos. 388 and 399.

### E.      The Property Ownership Lawsuit Resumes

For over two years after the Court's entry of the abstention order in the Property Ownership Lawsuit, proceedings in the Divorce Action lingered on without any resolution.[35]  Ultimately, on February 28, 2017, the Family Court dismissed the Divorce Action for want of prosecution.  Thus, on March 14, 2017, the Trustee requested a status conference in the Property Ownership Lawsuit to bring the dismissal to the Court's attention and discuss a potential termination of the previously ordered abatement.[36]  Following the status conference, upon motion of the Trustee for the Court to withdraw the order of abstention based upon such changed circumstances, the Court entered an order withdrawing the abstention and setting the Property Ownership Lawsuit for trial.[37]  On June 27, 2017, following trial, the Court entered a Final Judgment declaring the Properties to constitute property of the bankruptcy estate (the "**Property Ownership Judgment**").[38]

### F.      The Trustee Sells the Properties

On August 3, 2017, the Trustee filed a motion to sell the Commercial Properties to SAI Reed Properties, Inc. ("**SAI**") free and clear of all liens, claims and encumbrances.[39]  The Debtor objected to the sale.[40]  Pursuant to the objection, the Debtor argued, in essence, that because the alleged value of the Properties exceeded the alleged aggregate amount of community claims that

---

[35] *See* Property Ownership Lawsuit Docket Nos. 26, 29 and 31 (status reports filed by the Trustee with respect to the Divorce Action).

[36] *See* Property Ownership Lawsuit Docket No. 33; *see also* Docket No. 33, at p.13 (Debtor's acknowledgment of the dismissal on 2/28/2017).  Subsequent to the dismissal, the Debtor initiated another divorce action; however, the Debtor nonsuited the second action in April 2017.

[37] *See* Property Ownership Lawsuit Docket Nos. 35 and 37.  A similar order was entered into the Foster Avoidance Lawsuit, *see* Foster Avoidance Lawsuit Docket No. 24, and the Property Ownership Lawsuit and Foster Avoidance Lawsuit were set for a combined trial in June 2017.

[38] *See* Property Ownership Lawsuit Docket No. 43; *see also* Foster Avoidance Lawsuit Docket No. 30 (Final Judgment).

[39] *See* Bankruptcy Case Docket No. 399.

[40] *See* Bankruptcy Case Docket No. 408.

could be charged against the Properties, then, contrary to the Property Ownership Judgment, the Properties did not constitute property of the bankruptcy estate pursuant to the provisions of 11 U.S.C. § 541(a)(2)(B).[41]   Consequently, the Debtor argued that the Court did not have subject matter jurisdiction to approve the proposed sale.

Following an evidentiary hearing on the motion, the Court entered an order granting the motion to sell (the "**Commercial Property Sale Order**")[42] and thereafter also entered an order denying the Debtor's motion for reconsideration.[43]   No appeal was taken from the Commercial Property Sale Order or the order denying reconsideration.  On or about November 2, 2017, the sale of the Commercial Properties to SAI closed,[44] and in connection with recording the transfer of the property, on November 7, 2017, a copy of the Property Ownership Judgment was recorded in the Tarrant County, Texas property records at document D217258279 (the "**Recorded Property Ownership Judgment**").[45]

Separately, on December 6, 2017, the Trustee filed a motion to sell the Powell Property free and clear of all liens, claims and encumbrances.[46]   Once again, the Debtor objected, raising the same arguments as set forth in her objection to the sale of the Commercial Properties.[47] Following an evidentiary hearing on the motion, the Court entered an order granting the motion to

---

[41] *See* 11 U.S.C. § 541(a)(2)(B) (providing that in the case of community property owned by a debtor and the non-debtor spouse of such debtor, the debtor's estate includes, among other things, all such community property that is liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the non-debtor spouse of the debtor, to the extent that such community property is so liable).

[42] *See* Bankruptcy Case Docket No. 419.

[43] *See* Bankruptcy Case Docket No. 457.

[44] *See* Bankruptcy Case Docket No. 479 (Exhibit A – seller's statement dated 11/2/2017).

[45] The Court takes judicial notice of such filing.

[46] *See* Bankruptcy Case Docket No. 434.

[47] *See* Bankruptcy Case Docket No. 442.

sell (the "**Powell Property Sale Order**").[48] No appeal was taken from the Powell Property Sale Order.

### G. The Applications for Compensation and Reimbursement of Expenses

On March 19, 2018, SLPC filed its application for the allowance of compensation and the reimbursement of expenses in the Bankruptcy Case.[49] The Debtor filed an untimely objection to the application on April 13, 2018.[50] Pursuant to the objection, the Debtor made the following, among other, assertions in support of her request for denial of the application, notwithstanding the Court's previously issued Property Ownership Judgment, Commercial Property Sale Order and Powell Property Sale Order:[51]

- "[N]either the bankruptcy trustee nor her legal counsel should be paid for pursuing property that was not property of the bankruptcy estate under 11 USC 541(a)(2)(B)…." (page 26)

- "In the instant case, [ ] trustee knowingly and intentionally sought property claimed by the debtor in an ongoing state divorce proceeding under Tex. Fam. Code 7.009 beyond the extent that such property was liable under Texas Law for an allowed claim against the debtor or liable for a joint community claim for which both the debtor and the debtor's non-filing spouse would be liable under the plain meaning of Texas law." (page 28)

- "Service is not reasonable nor necessary for arguments that time spent arguing that the trustee was the sole party with standing to bring the debtor's state divorce claims against real property that was under the sole management and control of the debtor's non-filing spouse…." (page 30)

- "Bankruptcy Courts cannot usurp the statutorily imposed limits of their limited subject matter jurisdiction under 11 U.S.C. 541(a)(2)(B) simply to make the property and money under the debtor's non-filing spouse sole management and control available to pay the a bankruptcy trustee and the bankruptcy trustee's alleged legal fees in accordance with 11 USC 330…." (page 34)

---

[48] *See* Bankruptcy Case Docket No. 455.

[49] *See* Bankruptcy Case Docket No. 468.

[50] *See* Bankruptcy Case Docket No. 471.

[51] The Debtor was also under the mistaken impression that the Court was without authority to award compensation under section 330 of the Bankruptcy Code because such an award would violate the American Rule. *See, e.g., id.* at pp. 10-12, 32.

- "The trustee and her legal counsel can show no control precedent to support the trustee fee application pursuant to 11 USC 330 for pursuing property that was not liable under Texas law for an allowed claim of a creditor under the plan meaning of 11 USC 541(a)(2)(B)" (page 37)

- "Where the record clearly reveals that the instant panel trustee has breached her duty the U.S. Trustee should act." (page 39)

- "Regina Nachael Howell Foster party in interest[], prays that the application for fees be denied [t]o the extent that the application is for disloyal service, prays that the US trustee intervene as of right in the interest of justice and D[u]e Process and in accordance with the duties imposed on the US trustee under the bankruptcy code, and for such other further and additional relief required by law and equity for which is shown in the interest of justice and Due Process." (pages 39-40).

On April 24, 2018, the Court entered an order approving the SLPC application (the "**SLPC Fee Order**").[52]  In rejecting the Debtor's objection as untimely, the Court added that even if the Debtor had asked for an extension of time to object, the requested extension would have been denied due to the lack of any merit to the objection:[53]

> Even if [Debtor] had filed a timely motion to enlarge the period for objections, I would have denied it. … [E]nlarging the time to object and then conducting a hearing on the application would only prolong a pattern of conduct that has brought unnecessary delay and expenses to the administration of this estate.  I will not catalogue here all of the actions of [Debtor] over the past five and one-half years that have drawn on the resources of my court, two U.S. district court judges, at least three Texas district court judges, at least one panel of judges from the Fifth Circuit Court of Appeals, and the Fort Worth Court of Appeals.  [Debtor] makes the same or similar arguments in the objection as those she made to me and those other courts in countless filings and hearings.  These arguments include, but are not limited to, the assertion that the property at issue was never property of her estate (even though [Debtor] scheduled it as such), that the Chapter 7 trustee committed fraud on the estate, and that my court has no jurisdiction over the property.  I have rejected these arguments and entered final orders that effectuate my rulings.

---

[52] *See* Bankruptcy Case Docket No. 476.

[53] *Id*. at p. 2.

On May 10, 2018, the Debtor filed a motion for reconsideration which was denied by the Court.[54] The Debtor then appealed.[55]  The appeal was thereafter dismissed by the District Court for want of prosecution.[56]

Separately, on June 14, 2018, the Trustee filed her application for the allowance of compensation and the reimbursement of expenses in the Bankruptcy Case.[57]  Notice of the application and of the deadline to object was timely and properly provided to the Debtor.[58]  The Debtor did not object and on July 10, 2018, the Court entered an order approving the application (the "**Trustee Fee Order**").[59]  No appeal was taken from the Trustee Fee Order.

### H.      The Trustee's Proposed Final Distribution of the Estate

On June 13, 2018, the Trustee filed her final report and proposed distribution with respect to administration of the estate.[60]  Notice of the final report and proposed distribution and of the deadline to object was timely and properly provided to the Debtor.[61]  Neither the Debtor nor any other party in interest objected.  Thus, the Trustee made all final distributions and filed her final account and distribution report.[62]  On September 27, 2018, the Court entered an order approving the Trustee's final report and discharging the Trustee,[63] whereupon the Bankruptcy Case was closed.[64]

---

[54] *See* Bankruptcy Case Docket Nos. 480 and 494.

[55] *See* Bankruptcy Case Docket No. 503.

[56] *See* Bankruptcy Case Docket No. 525.

[57] *See* Bankruptcy Case Docket No. 499.

[58] *See* Bankruptcy Case Docket No. 500.

[59] *See* Bankruptcy Case Docket No. 523.

[60] *See* Bankruptcy Case Docket No. 497.

[61] *See* Bankruptcy Case Docket Nos. 498, 501 and 502.

[62] *See* Bankruptcy Case Docket No. 527.

[63] *See* Bankruptcy Case Docket No. 528.

[64] *See* Bankruptcy Case Docket (docket entry of 9/27/2018 reflecting closing of Bankruptcy Case).

## I.      *The Debtor Initiates a New Round of Attacks*

Nearly a year later, following the retirement of Judge Nelms and the appointment of the above-signed judge in his place, the Debtor commenced a new round of filings to seek yet another bite at the apple.

First, the Debtor filed a "*Motion to Reopen & Motion to Vacate Pursuant to Fed. Rule 60(b)(4)*" in the Property Ownership Lawsuit.[65]  Pursuant to the motion, the Debtor requested a reopening of the Property Ownership Lawsuit and entry of an order vacating the Property Ownership Judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Reiterating virtually all of the same arguments that she had previously made, the Debtor asserted, among other things, that the Property Ownership Judgment was void because "the bankruptcy court lacked subject matter [jurisdiction] of the real property under 11 USC 541(a)(2)(B) because the chapter 7 trustee acted outside of the scope of her jurisdiction in seeking property under the debtor's non-filing spouse that was not under the bankruptcy court's subject matter jurisdiction because such real property was not liable under Texas for the pre-petition claims assert[ed] against the debtor."[66]  She further argued that the Bankruptcy Case "was never about paying the debtor's creditor[s] or any valid enforceable creditor's claim against the bankruptcy estate, this case was always about fraudulently obtaining administrative fees.  In the instant case, the trustee conspired to obstruct the administration of justice in both the State Court Family proceeding and to knowingly and intentionally wholly ignoring state law for the sole purpose of receiving compensation in violation of 18 U.S.C. § 152(6)…."[67]

---

[65] *See* Property Ownership Lawsuit Docket No. 45.

[66] *See id*. at ECF p. 31.

[67] *See id*. at ECF p. 27.

On June 26, 2019, the Court entered an order denying the motion (the "**Judgment Vacatur Denial Order**").[68] The Debtor then appealed the Judgment Vacatur Denial Order[69] and the appeal was later dismissed by the District Court for want of prosecution.[70]

Second, on July 10, 2019, the Debtor filed a "*Motion to Reopen Bankruptcy Case to Hear Motion for Leave to File Lawsuit Against Panel Trustee for Ultra Vires Acts, In Violation of 18 U.S.C. § 152(6), 11 USC 704 and 11 U.S.C. § 328(c), By Seeking Property That Was Not Under the Subject Matter Jurisdiction Under 11 USC 541(A)(2)(B) to Pay Compensation Under 11 USC 326 and 11 USC 330 & Motion to Vacate Judgment Under Fed. R. Civ. P. 60(B)(4) For Lack of Subject Matter Jurisdiction*" in the Bankruptcy Case.[71] Pursuant to the motion, the Debtor requested the reopening of the Bankruptcy Case (a) for the purpose of having the Court enter an order vacating the Commercial Property Sale Order, the Powell Property Sale Order, the SLPC Fee Order and the Trustee Fee Order based upon the Court's alleged lack of subject matter jurisdiction to enter such orders, and (b) to pursue litigation against the Trustee for her alleged improper interference with the Divorce Action, alleged improper disbursement of estate funds and alleged improper pursuit of administration of the estate resulting in excess costs to the estate. The Trustee responded in opposition to the motion and the Debtor filed a reply thereto.[72]

On August 1, 2019, the Court conducted an evidentiary hearing on the motion, at the conclusion of which the Court announced that the motion would be denied based upon the findings and conclusions orally read into the record.[73] On August 27, 2019, the Court entered the order

---

[68] *See* Property Ownership Lawsuit Docket No. 46.

[69] *See* Property Ownership Lawsuit Docket No. 48.

[70] *See* Property Ownership Lawsuit Docket No. 74.

[71] *See* Bankruptcy Case Docket No. 531.

[72] *See* Bankruptcy Case Docket Nos. 540 and 543.

[73] *See* Bankruptcy Case Docket No. 547 (transcript of ruling).

denying the Debtor's motion.[74]  The Debtor's subsequent request for reconsideration of the order was also denied.[75]

## J.    The Debtor Files the Current Complaint in State Court

At no point in time did the Debtor ever seek or obtain permission from the Court to pursue litigation against the Trustee or her counsel in any other forum.  Notwithstanding same, on November 7, 2019, the Debtor filed her Original Complaint (the "**Current Complaint**") against the Trustee, SLPC, Hoodenpyle and Shriro in the 153rd Judicial District Court, Tarrant County, Texas (the "**State Court**") under Cause No. 153-313162-19 (the "**Removed Lawsuit**").[76]  The Debtor also named Foster and SAI as defendants under the Current Complaint (Foster, SAI and the Removing Defendants collectively referred to as the "**Defendants**").

In the Current Complaint, the Debtor delivers a repackaged version of the same complained of actions, asserting, for example, the following:

- "[I]n an affidavit filed on January 6, 2014 in the bankruptcy proceeding, the trustee and her counsel began to conspire to wrongfully interfere with the Divorce Proceeding…" (page 6)

- Trustee's counsel "argued in the bankruptcy case hearing, that the Trustee as Intervenor, in the divorce proceeding, would need assistance from the Bankruptcy Court in conspiring to commit fraud upon the state divorce court and circumvent Due Process…." (page 8)

- "[A]n order was entered by the bankruptcy court on January 10, 2014 … purporting to expressly Stay the state divorce court's ability to 'determine what would be a just and equitable division of property under Tex. Fam. Code 7.001.'  The January 10, 2014 Order purport[ed] to stay the division of community property, over one 2 months after the automatic stay of proceedings terminated by operation of law under 11 USC 362(c)(2)(C), which is a violation of 28 USC 2283, which prohibits a federal court from staying a state court proceeding, unless expressly authorized by Congress….[T]he subject matter jurisdiction of a bankruptcy court, over

---

[74] *See* Bankruptcy Case Docket No. 549.

[75] *See* Bankruptcy Case Docket Nos. 552-554 and 564.

[76] See Docket No. 1 (Exhibit A (Part 1) (docket from State Court Lawsuit) and Exhibit A (Part 2) (copy of the Current Complaint)).

community property under the non-bankruptcy filing spouse, in a community property state, is limited to the extent that such property would be liable for the claims of the community creditors for which both spouses would be liable under state law." (pages 9-10 and n.27)

- The Trustee "and her counsel(s) of record did knowingly and willfully conspire with Carlos Foster to violate Texas Penal Code § 32.46 by causing another to sign or execute any document affecting property, causing and/or inducing a public servant to file or record any purported judgment in the County Records of Tarrant county on or about November 7, 2017, as D217258279,[77] with the sole intent of causing Regina Nachael Howell Foster, and her minor Children, retaliatory harm in violation of Texas Penal Code § 36.04." (pages 13-14)

- "On June 13, 2018, [the Trustee] filed her final interim report showing how she and her conspirators had been paid with community property that had been wrongfully seized by the trustee by the November 7, 2017, D217258279 filing in the Tarrant County Property Records…." (page 14)

- The Trustee "as an appointed Chapter 7 panel Trustee and Defendant Singer Levick, acting by and through, defendant Michelle Shiroo [sic] and/or Todd Hoodenpyle, as appointed counsel for the Chapter 7 Panel trustee, as public servants under the purported authority 11 USC 704 and 11 USC 327 did knowingly conspire to commit an offense under Texas Penal Code Sec. 39.02(a), with intent to obtain a benefit of undue compensation by knowingly wrongfully intervening in an ongoing divorce proceeding [and taking actions therein]" (pages 16-17)

- "Obtaining a judgment by fraud makes the judgment void and subject to collateral attack" (page 20)

- "Defendant [SAI] was a straw purchaser for Carlos Foster as part of the conspiracy and as such title should be quieted against Defendant [SAI] as a void pretend sale and against public policy of this state." (page 20)

Based upon the above and similar allegations, the Debtor asserts the following purported causes

of action against the Defendants in the Removed Lawsuit:

(1)     Conspiracy to interfere with Debtor's "right under the Open Courts Provision of the Texas Constitution to seek spousal support and child support from [Foster] in violation of [Debtor's] rights under the Texas Constitution" by allegedly (a) enabling Foster "to evade his lawfully imposed duties" under the Texas Family Code and (b) filing the Recorded

---

[77] Referring to the Recorded Property Ownership Judgment.

Property Ownership Judgment. (Asserted against all Defendants) (referred to herein as the "**Support Conspiracy Claim**").[78]

(2)     Conspiracy to commit an offense under Texas Penal Code § 39.02(a) with an intent to obtain the benefit of undue compensation by allegedly knowingly and wrongfully intervening in the Divorce Action and taking certain actions therein. (Asserted against the Trustee and SLPC) (referred to herein as the "**Compensation Conspiracy Claim**").[79]

(3)     Violation of Texas Civil Practices and Remedies Code 10 and 12[80] by allegedly obtaining a judgment by fraud. (Asserted against SLPC, Hoodenpyle and Shriro)[81] (referred to herein as the "**Judgment by Fraud Claim**").[82]

(4)     Quiet title with respect to the Trustee's sale of the Commercial Properties based upon the alleged "void pretend sale." (Asserted against SAI) (referred to herein as the "**Quiet Title Claim**" and collectively with the Support Conspiracy Claim, the Compensation Conspiracy Claim and the Judgment by Fraud Claim, the "**Current Litigation Claims**").[83]

In the Debtor's own words, pursuant to the Current Complaint she "seeks to set aside [the] sale of real property and [obtain] damages" on account of the alleged "civil conspiracy [among] two or more persons who used their official position of public trust to unlawfully … cause another to sign or execute a document affecting property, caused and/or induced a public servant to file and record a Constitutionally VOID judgment, in the County Records of Tarrant county on or about November 7, 2017, as D217258279, with the sole intent of causing Regina Nachael Howell Foster, and her minor Children, retaliatory harm … and for the sole purpose of violating Regina Nachael

---

[78] *See* Current Complaint, ¶ 21 (first ¶ 21).

[79] *See id.*, ¶¶ 21-22 (second ¶ 21 and first ¶ 22).

[80] Debtor appears to be referring to chapters 10 (titled "Sanctions for Frivolous Pleadings and Motions") and 12 (titled "Liability Related to a Fraudulent Court Record or a Fraudulent Lien or Claim Filed Against Real or Personal Property") of the Texas Civil Practice and Remedies Code.

[81] The Debtor fails to specifically identify any of the Defendants in this portion of the Current Complaint. Based upon the Debtor's introductory assertion that a lawyer may be held accountable for improper actions under the Texas Civil Practices and Remedies Code, however, the Court construes the claim as being against the Trustee's lawyers – SLPC, Hoodenpyle and Shriro.

[82] *See* Current Complaint, ¶¶ 22-27.

[83] *See id.*, ¶¶ 28-29.

Howell Foster['s] Rights … by influencing the outcome of the Texas divorce proceeding…." Jurisdictional Motion, at pp. 6-7.

With respect to service of the Current Complaint, each of the officer returns of citation executed by Deputy Tanya Weiss for the citations issued to SLPC, Hoodenpyle and Shriro reflects that service of citation was executed on November 18, 2019, upon SLPC's, Hoodenpyle's and Shriro's respective receipt of the citation and a copy of the Current Complaint on such date by certified mail as evidenced by the respective executed certified mail green cards.[84]  In the case of the Trustee, the officer return of citation executed by Deputy Brandye Kear for the citation issued to the Trustee reflects that service of citation was executed on November 26, 2019, upon the Trustee's receipt of the citation and a copy of the Current Complaint on such date by certified mail as evidenced by the executed certified mail green card.[85]

On December 4, 2019, following her receipt of the Current Complaint, the Trustee filed an emergency motion to reopen the Bankruptcy Case for the purpose of removing the Removed Lawsuit to this Court.[86]  The Debtor filed an objection to the motion.[87]  Following a hearing on the motion, the Court entered an order on December 13, 2019, granting the motion and reopening the Bankruptcy Case for the limited purpose of addressing the Removed Lawsuit, if removed, and issues related thereto.[88]  On December 17, 2019, the Removing Defendants filed their Notice of Removal, thereby removing the Removed Lawsuit to this Court and initiating the current adversary proceeding.

---

[84] See Docket No. 1 (Exhibit A (Part 4), at pp. 7-15 – consisting of citation records from the Removed Lawsuit).

[85] See id. (Exhibit A (Part 4), at pp. 21-23).

[86] See Bankruptcy Case Docket No. 555.

[87] See Bankruptcy Case Docket No. 558.

[88] See Bankruptcy Case Docket No. 566.

### *DISCUSSION*

#### A.    *Timeliness of the Removal*

Section 1452 of title 28 provides that "[a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court[89] for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Section 1446 of title 28 provides that "[t]he notice of removal … shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."  28 U.S.C. § 1446(b)(1).

Separately, Rule 9027(a)(3) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that "[i]f a claim or cause of action is asserted in another court after the commencement of a case under the Code, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons."  Fed. R. Bankr. P. 9027(a)(3).

Pursuant to the Debtor's Timeliness Motion, the Debtor asserts that the Court must remand the Removed Lawsuit to the State Court due to the alleged untimeliness of the Removing

---

[89] By virtue of the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Miscellaneous Rule No. 33)* of the United States District Court for the Northern District of Texas, removal pursuant to 28 U.S.C. § 1452 is customarily taken directly to this Court, which is permissible.

Defendants' filing of their Notice of Removal. Equating the date of the *mailing* of the state court citations on November 15, 2019 with the date of *execution of service of citation*, the Debtor asserts that the removal was untimely because the Removing Defendants filed their Notice of Removal on December 17, 2019 – 32 days after the date of the mailing. The Removing Defendants, on the other hand, assert that the respective dates of their *receipt* of the Current Complaint – November 18, 2019 in the case of SLPC, Hoodenpyle and Shriro, and November 25, 2019 in the case of the Trustee – is the date that controls with respect to removal and that, as a result, the removal was timely, being within the 30-day removal period. The Removing Defendants are correct for several reasons.

First, it is undisputed that the Removing Defendants filed their Notice of Removal within 30 days of their *receipt* of the Current Complaint, and both 28 U.S.C. § 1446 and Bankruptcy Rule 9027(a)(3) clearly provide for the 30-day period for removal to commence upon the date of *receipt* of the initial pleading setting forth the claim for relief.[90]

Attempting to bypass this fact, the Debtor appears to focus on the alternative "service of summons" language in 28 U.S.C. § 1446.[91] But this prong of § 1446 only applies if the "initial pleading … *is not required to be served on the defendant*." 28 U.S.C. § 1446(b)(1) (emphasis added). Here, the Current Complaint was required to be served along with the citation on the Removing Defendants;[92] thus, the alternative prong of § 1446 is inapplicable.

---

[90] *See* 28 U.S.C. § 1446(b)(1) ("notice of removal … shall be filed within 30 days after the ***receipt by the defendant***, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based….") (emphasis added); Fed. R. Bankr. P. 9027(a)(3) (notice of removal may be filed with the clerk within "30 days after ***receipt***, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed….") (emphasis added).

[91] The language of Bankruptcy Rule 9027 is slightly different, focusing instead on the date of *receipt* of the summons instead of the date of *service* of the summons. *See* Fed. R. Bankr. P. 9027(a)(3).

[92] *See, e.g.*, Tex. R. Civ. P. 106(a) (requiring service of citation *with a copy of the petition attached thereto*); *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) ("For well over a century the rule has been firmly established in this state

Persisting with the argument, however, the Debtor cites *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) and *Merchants & Farmers Bank v. Rishel (In re Rishel)*, 417 Fed. Appx. 395 (5th Cir. 2011) as authority to the contrary. The Debtor's reliance on these opinions is misplaced. In *Murphy Bros.*, for example, the actual issue before the Supreme Court was whether the 30-day period of 28 U.S.C. § 1446(b) begins to run upon the defendant's receipt of a complaint alone in the absence of also being served with summons.[93] The Court concluded that it did not.[94] In setting the stage for the ruling, the Supreme Court explained that, in the normal situation, where a summons and complaint are served together, the 30-day removal period runs at once.[95] Thus, using the Supreme Court's reference to "service" out of context, the Debtor erroneously concludes that the case stands for the proposition that the date of service is what triggers the 30-day removal period.[96] This, however, overlooks the Court's clarification within the opinion that the date of a defendant's "receipt" of the complaint, if after the date of service of the summons, will ultimately control the commencement of the 30-day clock. As explained by the Supreme Court, "the defendant's period for removal will be no less than 30 days from service, *and in some categories, it will be more than 30 days from service, depending upon when the complaint is received*." *Murphy Bros.*, 526 U.S. at 354 (emphasis added).[97]

---

that a default judgment cannot withstand direct attack by a defendant who complains that he was not served in strict compliance with applicable requirements").

[93] *See Murphy Bros*., 526 U.S. at 347.

[94] *See id*. at 347-48.

[95] *See id.* at 354.

[96] *See* Motion, at p.5.

[97] *See also Pete v. Capital One, N.A*., No. 4:17-CV-594-A, 2017 WL 4083577, at *2 (N.D. Tex. Sept. 14, 2017) ("courts agree that the thirty-day removal period begins ***after receipt by the named defendant of the pleading*** and not simply after service on [its] agents") (emphasis added).

In *Rishel*, the issue presented on appeal was whether the district court had erred in remanding a removed case to state court based upon the asserted untimeliness of the removal.[98] Ultimately, based upon the provisions of 28 U.S.C. § 1447(d),[99] the Fifth Circuit determined that it lacked jurisdiction to entertain the appeal.[100] In discussing the background of the case, however, the Court loosely referred to the 30-day removal period of Bankruptcy Rule 9027(a)(3) as running from the date of service of the complaint.[101] Nowhere within the opinion, however, did the Court specify the date on which the complaint was either served or received by the defendants or the means of service of the complaint. If served by hand delivery, for example, then the date of service and the date of receipt would have been the same. Ultimately, the Fifth Circuit simply noted that the removal was taken well after the 30-day deadline without addressing the specific timing issue before this Court. Therefore, *Rishel* is of little benefit to this Court's analysis of the timeliness of the removal of the Removed Lawsuit.

Moreover, even if the alternative date of service of the summons (citation) were applicable, none of the officer returns of citation identifies the date of mailing as the date of actual service. Instead, as evidenced by each of the respective officer returns of citation, *service of citation* is reflected as having been executed on the date of the respective Removing Defendant's *receipt* of citation. Thus, even on this basis, given the officer returns of citation and the dates of service reflected therein, the Removing Defendants filed their Notice of Removal within 30 days after service of citation.

For all of the foregoing reasons, the Timeliness Motion will be denied.

---

[98] *See Rishel*, 417 Fed. Appx. at 395-96.

[99] *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise [subject to certain inapplicable exceptions]").

[100] *See Rishel*, 417 Fed. Appx. at 396.

[101] *See id.*

## B.  *Subject Matter Jurisdiction*

Next, the Debtor asserts that remand is separately required because the Court lacks federal-question subject matter jurisdiction of the Removed Lawsuit, implicitly referring to 28 U.S.C. § 1331.[102]  In support, the Debtor argues that because she has only asserted state law claims in the Current Complaint, then the Court lacks subject matter jurisdiction because there are no federal laws implicated by the action.  The most basic problem with the Debtor's assertion is that, as evidenced by the Notice of Removal, the Removing Defendants based their removal of the Removed Lawsuit on the bankruptcy subject matter jurisdictional provisions of 28 U.S.C. §§ 1334 and 157,[103] not the federal-question provisions of 28 U.S.C. § 1331.

"28 U.S.C. § 1334(b) grants jurisdiction to district courts and adjunct bankruptcy courts [pursuant to 28 U.S.C. § 157(a)] to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code…."[104]  The most remote of these alternative bases is "related to" jurisdiction.  Thus, for purposes of determining whether bankruptcy jurisdiction exists over removed litigation, it is necessary only to determine whether the litigation is at least "related to" the associated bankruptcy case.[105]  The Fifth Circuit has explained that "related to" is a term of art in bankruptcy jurisdiction.[106]  "'Related to' jurisdiction includes any litigation where the outcome could alter, positively or negatively, the debtor's rights,

---

[102] *See* 28 U.S.C. § 1331 ("The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[103] *See* 28 U.S.C. § 1334(b) ("Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *id.* § 157(a) ("Each district court may provide that … any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district").

[104] *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[105] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).

[106] *Bass*, 171 F.3d at 1022.

liabilities, options, or freedom of action or could influence the administration of the bankrupt estate."[107]

Here, the bankruptcy case at issue is obviously the Debtor's Bankruptcy Case. Thus, with the foregoing principles in mind, the jurisdictional question with respect to each of the Current Litigation Claims, as asserted against each individual Defendant, is whether the outcome of the litigation of such claim could alter, positively or negatively, the Debtor's rights, liabilities, options, or freedom of action or could influence the administration of the Debtor's bankrupt estate.

### 1.    *The Support Conspiracy Claim*

Beginning with the Support Conspiracy Claim, while less than a model of clarity, the Current Complaint appears to identify all of the Defendants as the target of such claim. Thus, for jurisdictional purposes, the Court will separately consider the Support Conspiracy Claim as asserted against the Removing Defendants from the Support Conspiracy Claim as asserted against Foster and SAI.

In the case of the Removing Defendants, because the Support Conspiracy Claim patently attacks actions taken by them as estate fiduciaries in the course of the administration of the Bankruptcy Case and the bankruptcy estate, the Court unquestionably possesses "related to" jurisdiction of the claim. Indeed, there is little doubt about the existence of bankruptcy jurisdiction over claims asserted against estate fiduciaries for actions taken in connection with administering the bankruptcy case and estate.[108]    Moreover, the actions of the Removing Defendants of which the Debtor complains have already been the subject of the Debtor's attack in the Bankruptcy Case,

---

[107] *Collins v. Sidharthan (In r KSRP, Ltd.)*, 809 F.3d 263, 266 (5th Cir. 2015) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010) (quoting *Edge Petroleum Operating Co. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir*.), cert. denied*, 552 U.S. 1022 (2007))).

[108] *See, e.g., Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931-32 (5th Cir.), *cert. denied*, 527 U.S. 1004 (1999); *Industrial Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.)*, 326 B.R. 102, 109 (Bankr. N.D. Tex. 2005), *aff'd*, 338 B.R. 703 (N.D. Tex. 2006).

and have been disposed of by the Court in connection with entry of the Order Denying Removal of the Trustee. Thus, as pursued against the Removing Defendants, the Support Conspiracy Claim amounts to a collateral attack of the Court's prior order, and a bankruptcy court always has subject matter jurisdiction of proceedings that call into question a prior order or judgment of the court.[109] For these reasons, the Court has jurisdiction over the Support Conspiracy Claim to the extent asserted against the Removing Defendants.

As asserted against Foster and SAI, on the other hand, the Support Conspiracy Claim's relatedness to the Bankruptcy Case is more tenuous. Among other things, neither Foster nor SAI served as an estate fiduciary in the Bankruptcy Case. Thus, their actions were not subject to the same type of judicial oversight and scrutiny as were the actions of the Removing Defendants. Additionally, it is hard to see how the outcome of the litigation of the Support Conspiracy Claim against these two parties would or could alter any of the rights of the Debtor as relevant to the Bankruptcy Case or the bankruptcy estate, or would or could influence the administration of the estate.[110] Of note, neither Foster nor SAI has filed a response in opposition to the remand.[111] Thus, because the Support Conspiracy Claim as asserted against Foster and SAI lacks the requisite "related to" connection to the Bankruptcy Case to support the Court's exercise of jurisdiction, the Court will remand the claim as asserted against them alone to the State Court.[112]

---

[109] *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Crocker v. Navient Solutions, LLC (In re Crocker)*, 941 F.3d 206, 212 (5th Cir. 2019).

[110] Among other things, because the Bankruptcy Case was filed under chapter 7 of the Bankruptcy Code and the complained of actions were taken post-petition, then any recovery that might be awarded against Foster or SAI on account of the Support Conspiracy Claim will not constitute property of the bankruptcy estate. *See* 11 U.S.C. § 541(a) (generally providing for the determination of property of the estate to be made as of the commencement of the bankruptcy case).

[111] That said, while Foster was served with citation and has made an appearance in the case, it does not appear as though SAI has been properly served with citation or summons to date.

[112] Even if the Court does possess jurisdiction of the Support Conspiracy Claim as asserted against Foster and SAI, the Court would nevertheless be required pursuant to 28 U.S.C. § 1334(c)(2) to abstain from exercising such jurisdiction. *See* discussion regarding mandatory abstention, *infra*.

### 2. *The Compensation Conspiracy Claim*

The Compensation Conspiracy Claim has been asserted by the Debtor against the Trustee and SLPC. Here, while the Debtor attempts to repackage her prior complaints with respect to the Trustee and SLPC as a purported claim under the Texas Penal Code, it is patently clear that the Compensation Conspiracy Claim is really nothing more than another disguised form of her complaints with respect to actions taken by the Trustee and her counsel in the course of the administration of the Bankruptcy Case and the bankruptcy estate. Moreover, similar to the Support Conspiracy Claim, the Compensation Conspiracy Claim constitutes a collateral attack on additional prior orders of this Court – the Trustee Fee Order and the SLPC Fee Order. Thus, based upon the Compensation Conspiracy Claim's relation to the Bankruptcy Case, the Court possesses jurisdiction of the claim.

### 3. *The Judgment by Fraud Claim*

Next, in the case of the Judgment by Fraud Claim, which has been asserted by the Debtor against the Removing Defendants, not only does the Debtor again attack actions taken by the Removing Defendants in connection with their administration of the Bankruptcy Case and estate, thus supporting the exercise of jurisdiction for the reasons previously noted, but here again she patently attacks several prior orders of this Court. Not only does the Debtor directly attempt to collaterally attack the Property Ownership Judgment, but she also indirectly attempts to collaterally attack the Judgment Vacatur Denial Order, the Commercial Property Sale Order and the Powell Property Sale Order. Consequently, because the Judgment by Fraud Claim seeks a determination of the invalidity of the above-referenced judgment and orders, or is at least dependent upon such a determination, the Court also clearly possesses jurisdiction over the Judgment by Fraud Claim.

### 4. The Quiet Title Claim

Finally, in the case of the Quiet Title Claim, which the Debtor has asserted against SAI, the Debtor attempts to invalidate the Trustee's sale of the Commercial Properties to SAI as a "void pretend sale" in direct contravention of the Commercial Property Sale Order. Thus, inasmuch as the Quiet Title Claim is predicated upon a direct, collateral attack of the Commercial Property Sale Order, the Court again possesses jurisdiction over the claim.

### C. Mandatory Abstention

Next, section 1334(c)(2) of title 28 provides that "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court [or by extension the bankruptcy court with respect to a referred proceeding under 28 U.S.C. § 157] shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." Thus, based upon the language of section 1334(c)(2), federal court abstention is mandated where (1) the proceeding is based upon a state law claim or cause of action; (2) there is no independent basis for federal jurisdiction of the proceeding other than 28 U.S.C. § 1334; (3) the proceeding is a non-core proceeding – *i.e.* being only related to a case under title 11, but not arising under title 11 or arising in a case under title 11; (4) an action involving the claim or cause of action was already commenced in a state court of appropriate jurisdiction; and (5) the action can be timely adjudicated in the state court.[113]

---

[113] 28 U.S.C. § 1334(c)(2); *see also Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997); *Edge Petroleum Operating*, 483 F.3d at 300.

Based upon section 1334(c)(2), the Debtor argues that remand of the case is alternatively required on abstention grounds because she has only allegedly asserted state law claims in the Current Complaint.  In opposition, the Removing Defendants present three arguments.  First, the Removing Defendants assert that because each of the Current Litigation Claims against them attacks actions taken in connection with the Bankruptcy Case, and directly or indirectly collaterally attacks one or more orders of this Court, the claims involve more than just pure state law claims.  Second, the Removing Defendants assert for the same reason that each of the Current Litigation Claims against them involves a core, as opposed to non-core, proceeding.  Finally, the Removing Defendants assert that the Current Litigation Claims against them cannot be timely adjudicated by the State Court because the claims were commenced in State Court without leave of this Court in violation of the *Barton* Doctrine.  The Court agrees with all three of the Removing Defendants' arguments.

First, while the Debtor claims that jurisdictional determinations must be made solely upon how she has labeled each of the Current Litigation Claims (*i.e.* purportedly as state law claims alone) as opposed to how they might be construed or recharacterized based upon defensive arguments of the Removing Defendants, a well-established corollary principle to the well-pleaded complaint rule is that "a plaintiff may not defeat removal by omitting to plead necessary federal questions."[114]  With that in mind, each of the Current Litigation Claims as alleged against the Removing Defendants involves allegations of wrongful conduct on the part of the Removing Defendants while serving as an estate fiduciary – actions, which must necessarily be evaluated under applicable provisions of title 11 of the United States Code, not state law.  Similarly, each of

---

[114] *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983)).

the Current Litigation Claims as alleged against the Removing Defendants, as well as the Quiet Title Claim asserted against SAI, seeks to collaterally attack one or more of this Court's prior orders – thereby similarly implicating legal principles under federal, as opposed to state, law. Thus, in short, each of these claims involves more than simple state law claims or causes of action.

Second, with respect to the core versus non-core distinction under 28 U.S.C. § 1334(c), a core proceeding is a proceeding arising under title 11 or arising in a case under title 11, which includes matters concerning the administration of the estate, the allowance or disallowance of claims against the estate (including professional fee and expense claims of a trustee and other estate professionals), and sales of property of the estate.[115] Importantly, when considering whether a proceeding involving a claim or cause of action is core or non-core, both the form and substance of the proceeding should be analyzed.[116]

With this in mind, among the provisions of title 11 that are implicated in considering the complained of conduct and compensation of the Removing Defendants as estate fiduciaries are sections 323, 324, 326, 328, 330, 363, 541, 704 and 726.[117] As such, the proceeding involving the Current Litigation Claim against the Removed Defendants is core in nature.[118] Separately, among the provisions of title 11 applicable to the Quiet Title Claim are sections 363 and 541.[119] Thus, similarly, the proceeding involving the Quiet Title Claim is also core in nature. Moreover, it goes without saying that any proceeding that calls into question the validity of a previously-issued judgment or order of this Court – an aspect of each of the Current Litigation Claims asserted

---

[115] *See* 28 U.S.C. § 157(b)(2)(A),(B),(N) & (O).

[116] *See Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 727 (Bankr. W.D. Tex. 2017).

[117] *See* 11 U.S.C. §§ 323, 324, 326, 328, 330, 363, 541, 704 and 726.

[118] *See Southmark Corp.*, 163 F.3d at 931-32; *Coastal Plains, Inc.*, 326 B.R. at 109.

[119] *See* 11 U.S.C. §§ 363 and 541.

against the Removing Defendants as well as the Quiet Title Claim – is subject to this Court's core jurisdiction.

Finally, the Removing Defendants highlight the fact that the Debtor did not obtain leave to pursue any of the Current Litigation Claims against them in state court in violation of the *Barton* Doctrine.  In *Barton v. Barbour*, 104 U.S. 126 (1881), the Supreme Court held that before suit may be brought against a court-appointed receiver in a forum other than the appointing court, leave of the appointing court must be obtained.[120]  This same principle has been applied to both bankruptcy trustees and court-approved professionals employed by a bankruptcy trustee, such that leave of the bankruptcy court must be obtained before suit may be commenced against any of these estate fiduciaries in a forum other than the bankruptcy court for actions taken by them in performing their duties as estate fiduciaries.[121]  Here, the Debtor did not obtain leave of court to pursue any of the Current Litigation Claims against any of the Removing Defendants in State Court.  Consequently, because the assertion of these claims in State Court was unlawful in violation of the *Barton* Doctrine, it goes without saying that the claims also cannot be timely adjudicated by the State Court.

For all of the foregoing reasons, the Debtor's request for remand of the Current Litigation Claims as asserted against the Removing Defendants and of the Quiet Title Claim on mandatory abstention grounds will be denied.

---

[120] *Barton*, 104 U.S. at 128.

[121] *See Carroll v. Abide*, 788 F.3d 502, 505 (5th Cir. 2015); *Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir.), *cert. denied*, 136 S. Ct. 588 (2015); *Coen v. Stutz (In re CDC Corp.)*, 610 Fed. Appx. 918, 921 (11th Cir. 2015); *McDaniel v. Blust*, 668 F.3d 153, 156-57 (4th Cir. 2012); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006).

### D.        *Permissive Abstention*

Finally, section 1334(c)(1) of title 28 provides that "[e]xcept with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court [or by extension the bankruptcy court with respect to a referred proceeding under 28 U.S.C. § 157] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Based upon section 1334(c)(1), the Debtor again argues that remand of the case on abstention grounds is appropriate because she has allegedly only asserted state law claims in the Current Complaint – claims which the Debtor asserts only the State Court should decide.  The Removing Defendants oppose discretionary abstention under section 1334(c)(1) for largely the same reasons that they have opposed mandatory abstention.

Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction conferred and adjudicate a controversy properly before it.  Permissive abstention is typically confined to three categories of proceedings: (1) cases presenting a federal constitutional question that might be mooted or presented in a different posture by a state court determination of pertinent state law; (2) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar; and (3) where, absent bad faith, harassment or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.[122]

---

[122] *See Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Reg'l Sports Network, LP),* 514 B.R. 211, 217-18 (Bankr. S.D. Tex. 2014) (citing *Colorado River Water Conservation Dist. V. United States*, 96 S. Ct. 1236, 1244-45 (1976)).

Supplementing that practical overlay, courts have identified the following factors as relevant to consideration of discretionary, permissive abstention:[123]

(1) the effect or lack thereof on the efficient administration of the estate if the court decides to abstain;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of applicable law;

(4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding;

(5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the proceeding on the court's docket;

(10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

Having considered the above factors, the Court finds that the Debtor has failed to present sufficient cause for remand of any of the Current Litigation Claims against the Removing Defendants or the Quiet Title Claim to the State Court. Among other things, remand of each of the aforementioned claims would or could have a negative impact on the administration of the Bankruptcy Case and bankruptcy estate inasmuch as each of the claims seeks to collaterally attack prior orders of the Court and each of the claims challenges actions taken in connection with the Bankruptcy Case and administration of the estate; despite the Debtor's effort to repackage prior

---

[123] *See 20/20 Management Co., Inc. v. Comunidad Corp.*, No. 3-08-CV-608, 2008 WL 4180081, at *2 (N.D. Tex. Sept. 3, 2008); *Kollmeyer v. Aetna Life Ins. Co. (In re Heritage S.W. Med. Group, P.A.)*, 423 B.R. 809, 815 (Bankr. N.D. Tex. 2010), *aff'd*, 448 B.R. 749 (N.D. Tex. 2011), *aff'd*, 464 Fed. Appx. 285 (5th Cir. 2012).

complaints to this Court as disguised state law claims, state law issues do not predominate over the bankruptcy issues at stake; there are no difficult or unsettled issues of state law involved; the claims are inherently related to and intertwined with the Bankruptcy Case and, thus, the proceeding is core in nature; it is not feasible to sever any legitimate state law issues that may exist from the core bankruptcy issues at stake; no undue burden to the Court's docket will result from retaining jurisdiction of the claims; with respect to claims asserted against the Trustee, the Debtor has clearly engaged in forum shopping given that her prior request to reopen the Bankruptcy Case for the purposes of suing the Trustee was denied; comity favors retention of the claims given the existence of this Court's prior orders and the simple fact that the Debtor is prohibited by the *Barton* Doctrine from pursuing prosecution of the claims in the State Court; and no evidence of prejudice has been presented to the Court.

Accordingly, the Debtor's request for remand of the Current Litigation Claims as asserted against the Removing Defendants and of the Quiet Title Claim on permissive abstention grounds will also be denied.

### *CONCLUSION*

For all of the foregoing reasons, the Court finds that the Removing Defendants' removal of the Removed Action was timely under 28 U.S.C. §§ 1452 and 1446 and Bankruptcy Rule 9027; that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157 of all of the Current Litigation Claims as asserted against the Removing Defendants and of the Quiet Title Claim, but not of the Support Conspiracy Claim as asserted against Foster and SAI; that neither any of the Current Litigation Claims as asserted against the Removing Defendants nor the Quiet Title Claim is required to be remanded to the State Court on mandatory abstention grounds under 28 U.S.C. § 1334(c)(2); and that the Debtor has failed to present sufficient grounds for the remand of any of

the Current Litigation Claims as asserted against the Removing Defendants or the Quiet Title Claim to the State Court on permissive abstention grounds under 28 U.S.C. § 1334(c)(1). Therefore, the Court will deny the Timeliness Motion and will deny the Jurisdictional Motion, except with respect to the Support Conspiracy Claim as asserted against Foster and SAI alone. The Court will issue separate orders on the Motions in conformity herewith.

### # # #   END OF MEMORANDUM OPINION   # # #