

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed October 30, 2020**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 12-43804-ELM |
| REGINA NACHAEL HOWELL FOSTER, | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| REGINA NACHAEL HOWELL FOSTER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 19-04131 |
| | § | |
| AREYA HOLDER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
(Re: Docket No. 27)

Before the Court in the above-captioned removed adversary proceeding is the *Motion to Dismiss Complaint, Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment* (the "**Combined Motion**") filed by Defendants Areya Holder n/k/a Areya Holder Aurzada (the "**Trustee**"), Singer & Levick, P.C. ("**SLPC**"), Todd A. Hoodenpyle ("**Hoodenpyle**") and Michelle E. Shriro ("**Shriro**" and together with the Trustee, SLPC and Hoodenpyle, the

"**Moving Defendants**"). In relation to the Moving Defendants' primary request within the Combined Motion for dismissal of the Current Complaint (as defined below), the Combined Motion has been docketed at Docket No. 27 (referred to herein as the "**Motion to Dismiss**").[1] The sole focus of this Memorandum Opinion is on the Motion to Dismiss.

Pursuant to the Motion to Dismiss, the Moving Defendants request dismissal of all claims asserted against them by Plaintiff Regina Nachael Howell Foster (the "**Debtor**"), the chapter 7 debtor in Case No. 12-43804 (the "**Bankruptcy Case**"), based upon application of the *Barton* doctrine, the protections afforded by various doctrines of immunity, and the *res judicata* effect of prior orders of the Court. The Debtor has timely filed an objection in opposition to the Motion to Dismiss (the "**Objection**")[2] disputing each of the dismissal grounds advanced by the Moving Defendants.

At a January 15, 2020 hearing in the adversary proceeding, the Debtor, without opposition from the Moving Defendants, requested that all pretrial dispositive motions involving the parties be considered on the parties' submissions alone without oral argument. The Court granted the unopposed request and, hence, the parties have waived their right to have oral argument on the Motion to Dismiss.

Having now reviewed the Debtor's Current Complaint and reviewed and considered the Motion to Dismiss and Objection thereto, the Court will grant the Motion to Dismiss for the reasons set forth below.

---

[1] In relation to the Moving Defendants' secondary request for judgment on the pleadings, the Combined Motion has been separately docketed at Docket No. 29. In relation to the Moving Defendants' alternative request for summary judgment, the Combined Motion has been separately docketed at Docket No. 28.

[2] *See* Docket No. 33.

## FACTUAL BACKGROUND

This removed action presents but the latest chapter in a nearly decade-long saga of challenges lodged by the Debtor, an attorney,[3] to the Trustee's administration of the Bankruptcy Case and the Debtor's bankruptcy estate. To put the current litigation and Motion to Dismiss in proper context, it is helpful to provide a recap of the events leading up to the current litigation.[4]

### A.    The Debtor's Initiation of the Bankruptcy Case and a Separate Divorce Proceeding

On July 2, 2012, the Debtor filed her voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case. The Trustee was appointed as trustee of the Debtor's chapter 7 bankruptcy estate.

Four days after filing for bankruptcy protection, the Debtor initiated a divorce proceeding (the "**Divorce Action**") against her husband Carlos Foster ("**Foster**") under Cause No. 322-518571-12 in Texas state court (the "**Family Court**").[5] In the Divorce Action, the Debtor "claimed an interest in three parcels of real property … recognized as important assets in her bankruptcy."[6] In follow-up to that assertion, on October 12, 2012, the Debtor filed amended schedules in her Bankruptcy Case to identify her claimed community property interest in these three parcels of real property, described as: (1) commercial real property located at 4716 E. Lancaster Avenue, Fort Worth, Texas 76103 (the "**Lancaster Property**"); (2) commercial real property located at 421 S.

---

[3] *See* Docket No. 1-4, at p.21 (ECF page 22) (signature page of Current Complaint which includes reference to, among other things, the Debtor's Texas Bar Number).

[4] For purposes of this proceeding, the Court hereby takes notice of each of the filings and orders referenced in the Factual Background.

[5] *See* Bankruptcy Case Docket No. 41 (amended schedule of personal property, identifying Divorce Action in ¶ 17); Bankruptcy Case Docket No. 83 (discussing initiation of Divorce Action in ¶ 2). Inasmuch as the Divorce Action ended up being transferred on one or more occasions from one family judge to another family judge during its pendency, the Court's use of the term "Family Court" herein is intended to refer to the particular family judge and corresponding Judicial District Court of Tarrant County, Texas, in which the Divorce Action was pending at any given point in time referenced herein.

[6] Bankruptcy Case Docket No. 83 (¶ 2).

Edgewood Terrace, Fort Worth, Texas 76103 (the "**Edgewood Property**" and together with the Lancaster Property, the "**Commercial Properties**"); and (3) rental real property located at 936 E. Powell Avenue, Fort Worth, Texas 76103 (the "**Powell Property**" and together with the Commercial Properties, the "**Properties**").[7]

At the same time that the Debtor amended her schedule of assets to reflect her asserted community property interest in the Properties, the Debtor also amended her schedule of claimed exemptions.[8] Of significance, nowhere within the amended exemptions schedule did she list any of the Properties as exempt property, and at no time thereafter did she ever assert that any of the Properties constituted exempt property. Thus, because the amended schedules facially evidenced that the Properties, or at least the Debtor's asserted interest in the Properties, constituted non-exempt property of the bankruptcy estate subject to administration by the Trustee, the Trustee began to investigate the background of the Properties.

Ultimately, the Trustee learned that the Debtor's husband, Foster, was claiming the Properties as his separate property based upon the fact that they had been acquired in the name of 1st Aid Accident Injury & Pain Center, Inc. ("**First Aid**"), a corporation that Foster had organized as his wholly-owned business prior to his marriage to the Debtor. With respect to the Debtor's claimed interest in the Properties, the Trustee learned that the Debtor was basing her claim of ownership on arguments of First Aid being the mere alter ego of Foster warranting a piercing of the corporate veil of First Aid to make the Properties part of the community property estate.[9]

---

[7] *See* Bankruptcy Case Docket No. 32 (Schedule A).

[8] *See id*. (Schedule C).

[9] *See, e.g.*, Bankruptcy Case Docket No. 69 (¶ 3).

**B.**     ***The Trustee Retains SLPC as Special Counsel to Assist in Analyzing and Addressing Matters Involving the Properties***

Given the complexities associated with the competing claims of ownership to the Properties, the Trustee, with Court approval, engaged SLPC as special counsel to assist the Trustee in further investigating and analyzing the competing claims of ownership and in otherwise addressing matters involving the Properties.[10]   Hoodenpyle and Shriro are attorneys with SLPC who worked on the engagement.

Following further investigation and analysis, the Trustee discovered, among other things, that First Aid had forfeited its corporate charter roughly eight years prior to the bankruptcy filing – in or about July 2004.  Thus, concluding that the forfeiture resulted in the Debtor and Foster each owning and controlling an undivided one-half interest in the Properties because the Properties were acquired in the name of First Aid during the marriage, the Trustee concluded that she had the responsibility and authority to administer the Properties as property of the bankruptcy estate.[11]   Accordingly, with the assistance of counsel, she began to explore options with respect to monetizing the value of the estate's interest in the Properties.

Following the Trustee's receipt of an offer from an entity affiliated with Foster's mother to purchase the bankruptcy estate's interest in the Properties, the Trustee filed a motion to sell the Properties.[12]   The Debtor objected to the motion, asserting, among other things, that the disputed ownership rights to the Properties had not yet been determined, that a determination with respect to the division of the marital estate had not yet been made in the Divorce Action, and that approval

---

[10] *See* Bankruptcy Case Docket No. 57 (order approving engagement).

[11] *See, e.g.*, Bankruptcy Case Docket No. 79 (¶ 28).

[12] *See* Bankruptcy Case Docket No. 68.

of the sale to an entity affiliated with Foster's mother was unwarranted given that the proposed sales price was allegedly significantly less than the previously listed valuation of the Properties.[13]

Following a hearing on the motion, the Court declined to approve the sale for two reasons. First, the Court was concerned that negotiations with respect to the terms of the sale had been predicated on the assumption that the estate held no more than a 50% interest in the Properties, whereas the division of the marital estate in the Divorce Action could conceivably lead to the estate obtaining a greater than 50% interest. Second, the Court was concerned that approval of the sale could have the unintended consequence of effecting a *de facto* division of the marital estate without the involvement of the Family Court.[14]

## C. The Trustee Initiates Litigation Against Foster and First Aid to Determine Ownership and Intervenes in the Divorce Action

To resolve the ownership dispute with Foster, on May 22, 2014, the Trustee initiated litigation against Foster and First Aid under Adversary Proceeding No. 14-04054 to seek the Court's entry of judgment declaring the Properties to constitute property of the bankruptcy estate and ordering turnover of the Properties to the Trustee (the "**Property Ownership Lawsuit**").[15]

---

[13] *See* Bankruptcy Case Docket No. 70.

[14] *See* Bankruptcy Case Docket No. 84 (order denying sale motion). The Trustee's subsequent request for reconsideration of the order denying approval of the sale was also denied. *See* Bankruptcy Case Docket No. 104.

[15] *See* Property Ownership Lawsuit Docket No. 1. Prior to the initiation of the Property Ownership Lawsuit, a flurry of additional activity took place in the Bankruptcy Case. In December 2013, the Debtor filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) to, among other things, allow the Family Court to determine all issues of ownership, apportionment and division of the Properties. *See* Bankruptcy Case Docket No. 83. The Trustee responded in opposition to the motion, asserting that disputes with respect to what interests in property constitute property of the *estate* and the distribution of *estate* property are matters to be decided by the bankruptcy court alone. *See* Bankruptcy Case Docket No. 86. Given the expansive scope of the requested relief in the lift stay motion and the stage of the proceedings in the Bankruptcy Case at that point in time, the Court entered an order denying the motion. *See* Bankruptcy Case Docket No. 105. The Debtor then appealed the order on behalf of her children, as their next friend, which was subsequently dismissed as untimely. *See* Bankruptcy Case Docket Nos. 111 and 120. Thereafter, the Debtor filed a motion on behalf of her children, as their next friend, for the District Court's withdrawal of the reference. *See* Bankruptcy Case Docket No. 123. Following the issuance of a report and recommendation to the District Court recommending against the withdrawal, the District Court entered an order denying the motion. *See* Bankruptcy Case Docket Nos. 146 and 149.

Foster and First Aid filed a joint answer in opposition.[16] Upon the commencement of the Property Ownership Lawsuit, notice of the action and of the Trustee's complaint was provided to, among others, the Debtor by and through her then-counsel of record.[17]

Separately, the Trustee also filed a plea in intervention in the Divorce Action to put the Family Court on notice of the proceedings in the Bankruptcy Case and to protect what the Trustee believed to be the bankruptcy estate's interest in the Properties, noting in the plea that the bankruptcy estate includes any community property of the Debtor and Foster under the Debtor's joint management and control as of the date of the bankruptcy filing pursuant to 11 U.S.C. § 541(a)(2)(A).[18]

Approximately five months into the litigation in the Property Ownership Lawsuit, the Trustee reached an agreement with Foster for resolution of the lawsuit – or so she thought. On October 24, 2014, the Trustee filed a motion in the Bankruptcy Case for approval of the settlement.[19] Under the terms of the proposed compromise, Foster would transfer all of his alleged right, title and interest in the Commercial Properties to the bankruptcy estate in exchange for the Trustee's transfer and conveyance of all of the bankruptcy estate's alleged right, title and interest in the Powell Property to Foster, and the parties would exchange releases (excluding, for the avoidance of doubt, claims by the Debtor against Foster for spousal support, child support and

---

[16] *See* Property Ownership Lawsuit Docket Nos. 11 and 18.

[17] *See* Bankruptcy Case Docket No. 151 (reflecting initiation of Property Ownership Lawsuit and including a link to the Trustee's original complaint; noticed via the Court's ECF facilities to all registered ECF users as of 5/22/2014, including the Debtor's then-counsel of record in the Bankruptcy Case); *see also* Bankruptcy Case Docket No. 81 (notice of appearance filed by counsel for the Debtor on 12/2/2013, thereby registering counsel for ECF notice in the case); Bankruptcy Case Docket No. 195 (Debtor's counsel's motion to withdraw, not filed until 11/13/2014).

[18] *See* Bankruptcy Case Docket No. 161, Exh. C (copy of plea in intervention); *see also* 11 U.S.C. § 541(a)(2)(A) (providing that property of the estate includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is … under the sole, equal, or joint management and control of the debtor").

[19] *See* Bankruptcy Case Docket No. 167.

alimony).[20]  The compromise would also resolve a corollary lawsuit (Adversary Proceeding No. 14-04068) filed by the Trustee against Foster for the avoidance and recovery of rental payments generated by the Properties (the "**Foster Avoidance Lawsuit**").[21]

The Debtor filed an objection to the motion to compromise on behalf of herself and her children, as their next friend.[22]  Pursuant to the objection, the Debtor, in essence, asserted that because Foster had been claiming the Properties as his separate property, which the Debtor construed as indirectly also constituting a claim to sole management and control of the Properties to the extent that they might be determined to be community property instead of separate property, then such claims called into question whether the bankruptcy estate actually had an interest in the Properties under section 541(a)(2) of the Bankruptcy Code.[23]  And, thus, because these ownership issues had not yet been determined, and because a division of the martial estate had not yet occurred in the Divorce Action, the Debtor argued that the settlement constituted a "collusive," "illusory" agreement designed to deprive the Debtor and her children of their rights under

---

[20] *See id.* (¶ 4).

[21] *See* Foster Avoidance Lawsuit Docket No. 1 (copy of complaint).  Upon the commencement of the Foster Avoidance Lawsuit, notice of the action and of the Trustee's complaint was similarly provided to, among others, the Debtor by and through her then-counsel of record.  *See* Bankruptcy Case Docket No. 153 (reflecting initiation of Foster Avoidance Lawsuit on 7/2/2014 and including a link to the Trustee's original complaint; noticed via the Court's ECF facilities to all registered ECF users as of 7/2/2014, including the Debtor's then-counsel of record in the Bankruptcy Case).

[22] *See* Bankruptcy Case Docket No. 203.  With respect to the standing of the Foster children to object, on June 12, 2013, the Debtor filed a proof of claim in the Bankruptcy Case (Claim No. 8) on behalf of her children, as their next friend, to assert a claim by the children against *herself* for breach of fiduciary duty and failure to pay property taxes.  On November 25, 2014, the Trustee filed an objection to the claim.  *See* Bankruptcy Case Docket No. 206.  On December 29, 2014, the Debtor filed a response on behalf of the children.  *See* Bankruptcy Case Docket No. 236.  Following an evidentiary hearing on the objection on January 5, 2015, the Court entered an order sustaining the objection and disallowing the claim in full.  *See* Bankruptcy Case Docket No. 334.  On appeal to the District Court, the order was affirmed.  *See* Bankruptcy Case Docket Nos. 382 and 383.  On further appeal to the Fifth Circuit, the Fifth Circuit dismissed the appeal as frivolous.  *See* Bankruptcy Case Docket Nos. 390 and 391.

[23] *See* 11 U.S.C. § 541(a)(2)(A) (providing that in the case of community property owned by a debtor and the non-debtor spouse of such debtor, the debtor's estate includes, among other things, all such community property that is under the sole, equal, or joint management and control of the debtor – omitting any reference to community property under the sole management and control of the non-debtor spouse).

applicable Texas marital laws. The Debtor additionally questioned the authenticity of Foster's signature to the settlement agreement, thereby calling into question whether Foster had even actually agreed to it.[24]

Following a hearing on the motion, the Court declined to approve the compromise based upon the lack of evidence of Foster's agreement to the settlement.[25] While not the basis for denial of the motion, the Court also voiced concerns with respect to the continuing dispute as to the character of the Properties, the shifting positions being taken by the Debtor and Foster in proceedings, and the overlay and impact of the pending Divorce Action to the division of the marital estate. Based upon such concerns and the Trustee's report that the costs of administering the estate were being exponentially driven up by the shifting, litigious positions being taken by the Debtor and Foster, the Court *sua sponte* issued an order of abstention in the Property Ownership Lawsuit on January 20, 2015.[26] Pursuant to the abstention order, the Court abstained in favor of the Family Court with respect to the determination of (1) whether the Properties were Foster's separate property or instead the community property of the Debtor and Foster, (2) if community property, whether the Properties were under the sole management and control of Foster or subject to joint management and control by both Foster and the Debtor, and (3) the fair and equitable division of the Properties under the provisions of the Texas Family Code taking into account such determinations; provided, however, that the Court retained authority over the distribution of any

---

[24] In this regard, the Trustee filed the motion to compromise after receiving a copy of the settlement agreement signed by Foster's counsel in the name of Foster, coupled with Foster's counsel's assurance that it would be followed up with a copy of the agreement actually signed by Foster. After Foster's counsel failed to timely deliver on such assurance, the Trustee disclosed the lack of an originally signed agreement to the Court. This resulted in the Court's issuance of a show cause order to Foster and his counsel. *See* Bankruptcy Case Docket No. 181. Ultimately, Foster and his counsel failed to produce a copy of the agreement signed by Foster, thereby calling into question whether there had ever been an actual meeting of the minds between the parties.

[25] *See* Bankruptcy Case Docket No. 306.

[26] A similar order of abstention was also entered in the Foster Avoidance Lawsuit. *See* Foster Avoidance Lawsuit Docket No. 10.

property constituting property of the estate and the right to approve any compromise that might be reached between the Debtor, Foster and First Aid in relation to such matters.[27]  The order also modified the automatic stay of 11 U.S.C. § 362(a) to enable the Family Court to make such determinations.[28]

Notably, the order did <u>not</u> preclude the Trustee from making an appearance in the Divorce Action.  To the extent that the Trustee deemed it necessary or advisable to appear in the action to protect or preserve what the Trustee reasonably believed to be property of the bankruptcy estate, such action was permissible and within the scope of statutory authority provided to the Trustee.[29]

### D.    *The Debtor Requests Removal of the Trustee*

On October 15, 2014, following the Trustee's intervention in the Divorce Action, the Debtor filed a motion on behalf of her children, as their next friend, to remove the Trustee as the chapter 7 trustee in the Bankruptcy Case.[30]  Pointing to the Trustee's prior request to sell the Properties, the initiation of the Property Ownership Lawsuit and the Foster Avoidance Lawsuit, the Trustee's intervention in the Divorce Action, and the fact that the Trustee had been in extended negotiations with Foster with respect to ownership of the Properties, the Debtor (on behalf of her children) asserted that cause existed for removal of the Trustee because such conduct allegedly evidenced a conspiracy between the Trustee and Foster to defraud the community estate, to defeat a just and equitable division of the marital estate, and to deprive the rights of the Foster children under the Texas Family Code.  Additionally, the Debtor (on behalf of her children) asserted that the Trustee was incurring unnecessary administrative costs to the detriment of creditors.

---

[27] *See* Property Ownership Lawsuit Docket No. 23.

[28] *See id.*

[29] *See* 11 U.S.C. §§ 323, 704(a)(1).

[30] *See* Bankruptcy Case Docket No. 161.

Curiously, despite complaints with respect to the Trustee's initiation of the Property Ownership Lawsuit and Foster Avoidance Lawsuit and the estate's incurrence of administrative expenses, the Debtor (on behalf of her children) also asserted that the Trustee was knowingly conspiring with Foster to allow all rental income from the Properties to be "stolen" by Foster while expenses of the Properties were going unpaid.

Following the Trustee's filing of a response in opposition to the motion[31] and the filing of a reply by the Debtor (this time both individually and on behalf of her children),[32] the Court conducted an evidentiary hearing. At the conclusion of the hearing, the Court issued an oral ruling, determining that the motion should be denied for lack of merit. Based upon the ruling, on December 23, 2014, the Court entered an order denying the motion (the "**Order Denying Removal of the Trustee**").[33] Both the Debtor, individually, and the Debtor, on behalf of her children as their next friend, filed appeals from the order.[34] The appeals were subsequently consolidated and dismissed by the District Court.[35] On further appeal to the Fifth Circuit, the appeal was dismissed by the Fifth Circuit as frivolous.[36]

### E.    *The Property Ownership Lawsuit Resumes*

For over two years after the Court's entry of the abstention order in the Property Ownership Lawsuit, proceedings in the Divorce Action lingered on without any resolution.[37] Ultimately, on

---

[31] *See* Bankruptcy Case Docket No. 186.

[32] *See* Bankruptcy Case Docket No. 194. In the reply, the Debtor, individually and on behalf of her children, raised even more serious allegations, claiming that the Trustee had intentionally misled the Court, asserted frivolous claims, and obstructed justice, warranting the issuance of sanctions in addition to removal.

[33] *See* Bankruptcy Case Docket No. 226.

[34] *See* Bankruptcy Case Docket Nos. 234 and 235.

[35] *See* Bankruptcy Case Docket Nos. 369-371.

[36] *See* Bankruptcy Case Docket Nos. 388 and 399.

[37] *See* Property Ownership Lawsuit Docket Nos. 26, 29 and 31 (status reports filed by the Trustee with respect to the Divorce Action).

February 28, 2017, the Family Court dismissed the Divorce Action for want of prosecution. Thus, on March 14, 2017, the Trustee requested a status conference in the Property Ownership Lawsuit to bring the dismissal to the Court's attention and discuss a potential termination of the previously ordered abatement.[38] Following the status conference, upon motion of the Trustee for the Court to withdraw the order of abstention based upon such changed circumstances, the Court entered an order withdrawing the abstention and setting the Property Ownership Lawsuit for trial.[39] On June 27, 2017, following trial, the Court entered a Final Judgment declaring the Properties to constitute property of the bankruptcy estate (the "**Property Ownership Judgment**").[40]

## F.       *The Trustee Sells the Properties*

On August 3, 2017, the Trustee filed a motion to sell the Commercial Properties to SAI Reed Properties, Inc. ("**SAI**") free and clear of all liens, claims and encumbrances.[41] The Debtor objected to the sale.[42] Pursuant to the objection, the Debtor argued, in essence, that because the alleged value of the Properties exceeded the alleged aggregate amount of community claims that could be charged against the Properties, then, contrary to the Property Ownership Judgment, the Properties did not constitute property of the bankruptcy estate pursuant to the provisions of 11 U.S.C. § 541(a)(2)(B).[43] Then, based upon her conclusion that the Properties did not constitute

---

[38] *See* Property Ownership Lawsuit Docket No. 33; *see also* Docket No. 33, at p.13 (Debtor's acknowledgment of the dismissal on 2/28/2017). Subsequent to the dismissal, the Debtor initiated another divorce action; however, the Debtor nonsuited the second action in April 2017.

[39] *See* Property Ownership Lawsuit Docket Nos. 35 and 37. A similar order was entered into the Foster Avoidance Lawsuit, *see* Foster Avoidance Lawsuit Docket No. 24, and the Property Ownership Lawsuit and Foster Avoidance Lawsuit were set for a combined trial in June 2017.

[40] *See* Property Ownership Lawsuit Docket No. 43; *see also* Foster Avoidance Lawsuit Docket No. 30 (Final Judgment).

[41] *See* Bankruptcy Case Docket No. 399.

[42] *See* Bankruptcy Case Docket No. 408.

[43] *See* 11 U.S.C. § 541(a)(2)(B) (providing that in the case of community property owned by a debtor and the non-debtor spouse of such debtor, the debtor's estate includes, among other things, all such community property that is

property of the estate, the Debtor argued that the Court did not have subject matter jurisdiction to approve the proposed sale of the Commercial Properties.

Following an evidentiary hearing on the motion, the Court entered an order granting the motion to sell (the "**Commercial Property Sale Order**")[44] and thereafter also entered an order denying the Debtor's motion for reconsideration.[45]  No appeal was taken from the Commercial Property Sale Order or the order denying reconsideration.  On or about November 2, 2017, the sale of the Commercial Properties to SAI closed,[46] and in connection with recording the transfer of the property, on November 7, 2017, a copy of the Property Ownership Judgment was recorded in the Tarrant County, Texas property records at document D217258279 (the "**Recorded Property Ownership Judgment**").[47]

Separately, on December 6, 2017, the Trustee filed a motion to sell the Powell Property free and clear of all liens, claims and encumbrances.[48]  Once again, the Debtor objected, raising the same arguments as set forth in her objection to the sale of the Commercial Properties.[49] Following an evidentiary hearing on the motion, the Court entered an order granting the motion to sell (the "**Powell Property Sale Order**").[50]  No appeal was taken from the Powell Property Sale Order.

---

liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the non-debtor spouse of the debtor, to the extent that such community property is so liable).

[44] *See* Bankruptcy Case Docket No. 419.

[45] *See* Bankruptcy Case Docket No. 457.

[46] *See* Bankruptcy Case Docket No. 479 (Exhibit A – seller's statement dated 11/2/2017).

[47] The Court takes judicial notice of such filing.

[48] *See* Bankruptcy Case Docket No. 434.

[49] *See* Bankruptcy Case Docket No. 442.

[50] *See* Bankruptcy Case Docket No. 455.

### G.      *The Applications for Compensation and Reimbursement of Expenses*

On March 19, 2018, SLPC filed its application for the allowance of compensation and the reimbursement of expenses in the Bankruptcy Case.[51]   The Debtor filed an untimely objection to the application on April 13, 2018.[52]   Pursuant to the objection, the Debtor made the following, among other, assertions in support of her request for denial of the application, notwithstanding the Court's previously issued Property Ownership Judgment, Commercial Property Sale Order and Powell Property Sale Order:[53]

- "[N]either the bankruptcy trustee nor her legal counsel should be paid for pursuing property that was not property of the bankruptcy estate under 11 USC 541(a)(2)(B)…." (page 26)

- "In the instant case, [ ] trustee knowingly and intentionally sought property claimed by the debtor in an ongoing state divorce proceeding under Tex. Fam. Code 7.009 beyond the extent that such property was liable under Texas Law for an allowed claim against the debtor or liable for a joint community claim for which both the debtor and the debtor's non-filing spouse would be liable under the plain meaning of Texas law." (page 28)

- "Service is not reasonable nor necessary for arguments that time spent arguing that the trustee was the sole party with standing to bring the debtor's state divorce claims against real property that was under the sole management and control of the debtor's non-filing spouse…." (page 30)

- "Bankruptcy Courts cannot usurp the statutorily imposed limits of their limited subject matter jurisdiction under 11 U.S.C. 541(a)(2)(B) simply to make the property and money under the debtor's non-filing spouse sole management and control available to pay the a bankruptcy trustee and the bankruptcy trustee's alleged legal fees in accordance with 11 USC 330…." (page 34)

- "The trustee and her legal counsel can show no control precedent to support the trustee fee application pursuant to 11 USC 330 for pursuing property that was not liable under Texas law for an allowed claim of a creditor under the plan meaning of 11 USC 541(a)(2)(B)" (page 37)

---

[51] *See* Bankruptcy Case Docket No. 468.

[52] *See* Bankruptcy Case Docket No. 471.

[53] The Debtor was also under the mistaken impression that the Court was without authority to award compensation under section 330 of the Bankruptcy Code because such an award would violate the American Rule.  *See, e.g., id.* at pp. 10-12, 32.

- "Where the record clearly reveals that the instant panel trustee has breached her duty the U.S. Trustee should act." (page 39)

- "Regina Nachael Howell Foster party in interest[], prays that the application for fees be denied [t]o the extent that the application is for disloyal service, prays that the US trustee intervene as of right in the interest of justice and D[u]e Process and in accordance with the duties imposed on the US trustee under the bankruptcy code, and for such other further and additional relief required by law and equity for which is shown in the interest of justice and Due Process." (pages 39-40).

On April 24, 2018, the Court entered an order approving the SLPC application (the "**SLPC Fee Order**").[54] In rejecting the Debtor's objection as untimely, the Court added that even if the Debtor had asked for an extension of time to object, the requested extension would have been denied due to the lack of any merit to the objection:[55]

> Even if [Debtor] had filed a timely motion to enlarge the period for objections, I would have denied it. … [E]nlarging the time to object and then conducting a hearing on the application would only prolong a pattern of conduct that has brought unnecessary delay and expenses to the administration of this estate. I will not catalogue here all of the actions of [Debtor] over the past five and one-half years that have drawn on the resources of my court, two U.S. district court judges, at least three Texas district court judges, at least one panel of judges from the Fifth Circuit Court of Appeals, and the Fort Worth Court of Appeals. [Debtor] makes the same or similar arguments in the objection as those she made to me and those other courts in countless filings and hearings. These arguments include, but are not limited to, the assertion that the property at issue was never property of her estate (even though [Debtor] scheduled it as such), that the Chapter 7 trustee committed fraud on the estate, and that my court has no jurisdiction over the property. I have rejected these arguments and entered final orders that effectuate my rulings.

On May 10, 2018, the Debtor filed a motion for reconsideration which was denied by the Court.[56] The Debtor then appealed.[57] The appeal was thereafter dismissed by the District Court for want of prosecution.[58]

---

[54] *See* Bankruptcy Case Docket No. 476.

[55] *Id*. at p. 2.

[56] *See* Bankruptcy Case Docket Nos. 480 and 494.

[57] *See* Bankruptcy Case Docket No. 503.

[58] *See* Bankruptcy Case Docket No. 525.

Separately, on June 14, 2018, the Trustee filed her application for the allowance of compensation and the reimbursement of expenses in the Bankruptcy Case.[59] Notice of the application and of the deadline to object was timely and properly provided to the Debtor.[60] The Debtor did not object and on July 10, 2018, the Court entered an order approving the application (the "**Trustee Fee Order**").[61] No appeal was taken from the Trustee Fee Order.

### H.     The Trustee's Proposed Final Distribution of the Estate

On June 13, 2018, the Trustee filed her final report and proposed distribution with respect to administration of the estate (the "**Proposed Final Distribution Report**").[62] Notice of the Proposed Final Distribution Report and of the deadline to object to the same was timely and properly provided to the Debtor.[63] Neither the Debtor nor any other party in interest objected. Thus, the Trustee made all final distributions and filed her final account and distribution report.[64] On September 27, 2018, the Court entered an order approving the Trustee's final report and discharging the Trustee (the "**Final Distribution and Discharge Order**"),[65] whereupon the Bankruptcy Case was closed.[66] No appeal was taken from the Final Distribution Order.

---

[59] *See* Bankruptcy Case Docket No. 499.

[60] *See* Bankruptcy Case Docket No. 500.

[61] *See* Bankruptcy Case Docket No. 523.

[62] *See* Bankruptcy Case Docket No. 497.

[63] *See* Bankruptcy Case Docket Nos. 498, 501 and 502.

[64] *See* Bankruptcy Case Docket No. 527.

[65] *See* Bankruptcy Case Docket No. 528.

[66] *See* Bankruptcy Case Docket (docket entry of 9/27/2018 reflecting closing of Bankruptcy Case).

## I.     *The Debtor Initiates a New Round of Attacks*

Nearly a year later, following the retirement of Judge Nelms and the appointment of the above-signed judge in his place, the Debtor commenced a new round of filings to seek yet another bite at the apple.

First, the Debtor filed a "*Motion to Reopen & Motion to Vacate Pursuant to Fed. Rule 60(b)(4)*" in the Property Ownership Lawsuit.[67]   Pursuant to the motion, the Debtor requested a reopening of the Property Ownership Lawsuit and entry of an order vacating the Property Ownership Judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Reiterating virtually all of the same arguments that she had previously made, the Debtor asserted, among other things, that the Property Ownership Judgment was void because "the bankruptcy court lacked subject matter [jurisdiction] of the real property under 11 USC 541(a)(2)(B) because the chapter 7 trustee acted outside of the scope of her jurisdiction in seeking property under the debtor's non-filing spouse that was not under the bankruptcy court's subject matter jurisdiction because such real property was not liable under Texas for the pre-petition claims assert[ed] against the debtor."[68]   She further argued that the Bankruptcy Case "was never about paying the debtor's creditor[s] or any valid enforceable creditor's claim against the bankruptcy estate, this case was always about fraudulently obtaining administrative fees.  In the instant case, the trustee conspired to obstruct the administration of justice in both the State Court Family proceeding and to knowingly and intentionally wholly ignoring state law for the sole purpose of receiving compensation in violation of 18 U.S.C. § 152(6)…."[69]

---

[67] *See* Property Ownership Lawsuit Docket No. 45.

[68] *See id*. at ECF p. 31.

[69] *See id*. at ECF p. 27.

On June 26, 2019, the Court entered an order denying the motion (the "**Judgment Vacatur Denial Order**").[70]  The Debtor then appealed the Judgment Vacatur Denial Order[71] and the appeal was later dismissed by the District Court for want of prosecution.[72]

Second, on July 10, 2019, the Debtor filed a "*Motion to Reopen Bankruptcy Case to Hear Motion for Leave to File Lawsuit Against Panel Trustee for Ultra Vires Acts, In Violation of 18 U.S.C. § 152(6), 11 USC 704 and 11 U.S.C. § 328(c), By Seeking Property That Was Not Under the Subject Matter Jurisdiction Under 11 USC 541(A)(2)(B) to Pay Compensation Under 11 USC 326 and 11 USC 330 & Motion to Vacate Judgment Under Fed. R. Civ. P. 60(B)(4) For Lack of Subject Matter Jurisdiction*" in the Bankruptcy Case.[73]  Pursuant to the motion, the Debtor requested the reopening of the Bankruptcy Case (a) for the purpose of having the Court enter an order vacating the Commercial Property Sale Order, the Powell Property Sale Order, the SLPC Fee Order and the Trustee Fee Order based upon the Court's alleged lack of subject matter jurisdiction to enter such orders, and (b) to pursue litigation against the Trustee for her alleged improper interference with the Divorce Action, alleged improper disbursement of estate funds and alleged improper pursuit of administration of the estate resulting in excess costs to the estate.  The Trustee responded in opposition to the motion and the Debtor filed a reply thereto.[74]

On August 1, 2019, the Court conducted an evidentiary hearing on the motion, at the conclusion of which the Court announced that the motion would be denied based upon the findings and conclusions orally read into the record.[75]  On August 27, 2019, the Court entered the order

---

[70] *See* Property Ownership Lawsuit Docket No. 46.

[71] *See* Property Ownership Lawsuit Docket No. 48.

[72] *See* Property Ownership Lawsuit Docket No. 74.

[73] *See* Bankruptcy Case Docket No. 531.

[74] *See* Bankruptcy Case Docket Nos. 540 and 543.

[75] *See* Bankruptcy Case Docket No. 547 (transcript of ruling).

denying the Debtor's motion.[76]  The Debtor's subsequent request for reconsideration of the order was also denied.[77]  No appeal was taken from either of the orders.

**J.**      ***The Debtor Files the Current Complaint in State Court***

At no point in time did the Debtor ever seek or obtain permission from the Court to pursue litigation against the Trustee or her counsel in any other forum.  Notwithstanding same, on November 7, 2019, the Debtor filed her Original Complaint (the "**Current Complaint**") against the Trustee, SLPC, Hoodenpyle and Shriro in the 153rd Judicial District Court, Tarrant County, Texas (the "**State Court**") under Cause No. 153-313162-19 (the "**Removed Lawsuit**").[78]  The Debtor also named Foster and SAI as defendants under the Current Complaint (Foster, SAI and the Moving Defendants are collectively referred to as the "**Defendants**").

In the Current Complaint, the Debtor delivers a repackaged version of the same complained of actions, asserting, for example, the following:

- "[I]n an affidavit filed on January 6, 2014 in the bankruptcy proceeding, the trustee and her counsel began to conspire to wrongfully interfere with the Divorce Proceeding…" (page 6)

- Trustee's counsel "argued in the bankruptcy case hearing, that the Trustee as Intervenor, in the divorce proceeding, would need assistance from the Bankruptcy Court in conspiring to commit fraud upon the state divorce court and circumvent Due Process…." (page 8)

- "[A]n order was entered by the bankruptcy court on January 10, 2014 … purporting to expressly Stay the state divorce court's ability to 'determine what would be a just and equitable division of property under Tex. Fam. Code 7.001.'  The January 10, 2014 Order purport[ed] to stay the division of community property, over one 2 months after the automatic stay of proceedings terminated by operation of law under 11 USC 362(c)(2)(C), which is a violation of 28 USC 2283, which prohibits a federal court from staying a state court proceeding, unless expressly authorized by Congress….[T]he subject matter jurisdiction of a bankruptcy court, over

---

[76] *See* Bankruptcy Case Docket No. 549.

[77] *See* Bankruptcy Case Docket No. 564.

[78] *See* Docket No. 1 (Exhibit A (Part 1) (docket from State Court Lawsuit) and Exhibit A (Part 2) (copy of the Current Complaint)).

community property under the non-bankruptcy filing spouse, in a community property state, is limited to the extent that such property would be liable for the claims of the community creditors for which both spouses would be liable under state law." (pages 9-10 and n.27)

- The Trustee "and her counsel(s) of record did knowingly and willfully conspire with Carlos Foster to violate Texas Penal Code § 32.46 by causing another to sign or execute any document affecting property, causing and/or inducing a public servant to file or record any purported judgment in the County Records of Tarrant county on or about November 7, 2017, as D217258279,[79] with the sole intent of causing Regina Nachael Howell Foster, and her minor Children, retaliatory harm in violation of Texas Penal Code § 36.04." (pages 13-14)

- "On June 13, 2018, [the Trustee] filed her final interim report showing how she and her conspirators had been paid with community property that had been wrongfully seized by the trustee by the November 7, 2017, D217258279 filing in the Tarrant County Property Records…." (page 14)

- The Trustee "as an appointed Chapter 7 panel Trustee and Defendant Singer Levick, acting by and through, defendant Michelle Shiroo [sic] and/or Todd Hoodenpyle, as appointed counsel for the Chapter 7 Panel trustee, as public servants under the purported authority 11 USC 704 and 11 USC 327 did knowingly conspire to commit an offense under Texas Penal Code Sec. 39.02(a), with intent to obtain a benefit of undue compensation by knowingly wrongfully intervening in an ongoing divorce proceeding [and taking actions therein]" (pages 16-17)

- "Obtaining a judgment by fraud makes the judgment void and subject to collateral attack" (page 20)

- "Defendant [SAI] was a straw purchaser for Carlos Foster as part of the conspiracy and as such title should be quieted against Defendant [SAI] as a void pretend sale and against public policy of this state." (page 20)

Based upon the above and similar allegations, the Debtor asserts the following causes of action against the Moving Defendants pursuant to the Current Complaint (collectively, the "**Subject Claims**"):[80]

(1)    Conspiracy to interfere with Debtor's "right under the Open Courts Provision of the Texas Constitution to seek spousal support and child support from [Foster] in violation of [Debtor's] rights under the Texas Constitution" by allegedly (a) enabling Foster "to evade his lawfully

---

[79] Referring to the Recorded Property Ownership Judgment.

[80] The Debtor has also asserted a quiet title claim against SAI to attack the Trustee's court-approved sale of the Commercial Properties to SAI as an allegedly "void pretend sale." *See* Current Complaint, ¶¶ 28-29.

imposed duties" under the Texas Family Code and (b) filing the Recorded Property Ownership Judgment. (Referred to herein as the "**Support Conspiracy Claim**").[81]

(2) Conspiracy to commit an offense under Texas Penal Code § 39.02(a) with an intent to obtain the benefit of undue compensation by allegedly knowingly and wrongfully intervening in the Divorce Action and taking certain actions therein. (Referred to herein as the "**Compensation Conspiracy Claim**").[82]

(3) Violation of Texas Civil Practices and Remedies Code 10 and 12[83] by allegedly obtaining a judgment by fraud.[84] (Referred to herein as the "**Judgment by Fraud Claim**").[85]

On December 4, 2019, the Trustee filed an emergency motion to reopen the Bankruptcy Case for the purpose of removing the Removed Lawsuit to this Court.[86] The Debtor filed an objection to the motion.[87] Following a hearing on the motion, the Court entered an order on December 13, 2019, granting the motion and reopening the Bankruptcy Case for the limited purpose of addressing the Removed Lawsuit, if removed, and issues related thereto.[88]

On December 17, 2019, the Moving Defendants filed their Notice of Removal, thereby removing the Removed Lawsuit to this Court and initiating the current adversary proceeding. The Debtor then filed two motions for remand, one challenging the timeliness of the removal (the "**Timeliness Motion**") and one challenging the Court's jurisdiction of the Removed Lawsuit (the

---

[81] *See id.*, ¶ 21 (first ¶ 21). The Debtor has also asserted the Support Conspiracy Claim against Foster and SAI.

[82] *See id.*, ¶¶ 21-22 (second ¶ 21 and first ¶ 22).

[83] Debtor appears to be referring to chapters 10 (titled "Sanctions for Frivolous Pleadings and Motions") and 12 (titled "Liability Related to a Fraudulent Court Record or a Fraudulent Lien or Claim Filed Against Real or Personal Property") of the Texas Civil Practice and Remedies Code.

[84] The Debtor fails to specifically identify any of the Defendants in this portion of the Current Complaint. Based upon the Debtor's introductory assertion that a lawyer may be held accountable for improper actions under the Texas Civil Practices and Remedies Code, however, the Court construes the claim as being against the Trustee's lawyers – SLPC, Hoodenpyle and Shriro.

[85] *See* Current Complaint, ¶¶ 22 (second ¶ 22) - 27.

[86] *See* Bankruptcy Case Docket No. 555.

[87] *See* Bankruptcy Case Docket No. 558.

[88] *See* Bankruptcy Case Docket No. 566.

"**Jurisdictional Motion**").[89]  The Court recently issued a Memorandum Opinion (the "**Remand Opinion**") and orders denying the Timeliness Motion and denying the Jurisdictional Motion with respect to the Subject Claims asserted against the Moving Defendants.[90]

## *JURISDICTION*

For reasons previously explained within the Remand Opinion,[91] the Court has jurisdiction of this proceeding with respect to the Subject Claims pursuant to 28 U.S.C. §§ 1334 and 157 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Miscellaneous Rule No. 33)* of the United States District Court for the Northern District of Texas.  Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409.  For reasons again set forth within the Remand Opinion,[92] the proceeding involving the Subject Claims is core in nature pursuant to 28 U.S.C. § 157(b)(2).  As such, the Court has the authority to enter a final order or judgment on the Subject Claims pursuant to 28 U.S.C. § 157(b)(1).[93]

## *DISCUSSION*

**A.**     ***Standards Applicable to a Rule 12(b)(6) Motion for Dismissal***

For pleading purposes, Rule 8 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable to adversary proceedings by Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule**"), simply requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," with each allegation

---

[89] *See* Docket Nos. 10 (Jurisdictional Motion) and 12 (Timeliness Motion).

[90] *See* Docket Nos. 49 (Remand Opinion), 50 (order on Jurisdictional Motion) and 51 (order on Timeliness Motion).

[91] *See* Remand Opinion, at pp.27-31 (such portion of the Remand Opinion is incorporated herein by reference).

[92] *See id.* at pp.32-34 (such portion of the Remand Opinion is incorporated herein by reference).

[93] In the event of a subsequent determination on appeal that the proceeding involving the Subject Claims is, in whole or in part, non-core in nature for purposes of 28 U.S.C. § 157(b)(1) and (b)(2), then the above-signed bankruptcy judge respectfully submits this Memorandum Opinion to The Honorable United States District Court for the Northern District of Texas as the above-signed bankruptcy judge's report and recommendation in accordance with 28 U.S.C. § 157(c)(1) with respect to disposition of the Motion to Dismiss.

in support thereof to be "simple, concise and direct."[94]   That said, pursuant to Federal Rule 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b), on motion of a defendant filed prior to the filing of the defendant's answer, a complaint is subject to dismissal against the defendant if the complaint fails to state a claim against the defendant upon which relief can be granted.[95]

As a general proposition, "[m]otions to dismiss are viewed with disfavor and are rarely granted."[96]  "To survive a motion to dismiss, [however,] a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[97]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[98]  In assessing facial plausibility, a court is to accept as true all well-pleaded factual allegations set forth within the complaint, even if doubtful in fact.[99]  But the allegations must consist of more than mere labels and conclusions.[100]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[101]   Additionally, the well-pleaded complaint rule is

---

[94] Fed. R. Civ. P. 8(a)(2), (d)(1); Fed. R. Bank. P. 7008.

[95] *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).

[96] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055 (2006).

[97] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 992-93 (5th Cir. 2019).

[98] *Iqbal*, 556 U.S. at 678.

[99] *Twombly*, 550 U.S. at 555; *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018).

[100] *Twombly*, 550 U.S. at 555.

[101] *Iqbal*, 556 U.S. at 678; *see also Allen*, 907 F.3d at 177 (explaining that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to prevent dismissal) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

inapplicable to legal conclusions.[102]  Courts "are not bound to accept as true 'a legal conclusion couched as a factual allegation.'"[103]

Subject to application of the foregoing principles, the determination of facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[104]  While "[t]he plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a defendant has acted unlawfully."[105]  Thus, to avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"[106]

**B**　　**Dismissal for Violation of the Barton Doctrine**

Turning now to the Moving Defendants' first argument for dismissal, because the Debtor never obtained leave of this Court to pursue the Subject Claims in State Court, the Moving Defendants assert that dismissal of the Subject Claims is required because the Subject Claims are barred by the *Barton* doctrine.  In fact, with respect to the claims asserted against the Trustee, the Moving Defendants highlight the fact that the Debtor brought those claims after this Court had expressly refused to reopen the Bankruptcy Case for the purpose of enabling the Debtor to pursue them in this Court.[107]

The Debtor does not dispute the fact that she did not obtain leave to pursue the Subject Claims in State Court.  Instead, she argues that the *Barton* doctrine is inapplicable for two reasons.  First, she attempts to skirt the issue altogether by arguing that the Moving Defendants' removal of

---

[102] *Iqbal*, 556 U.S. at 678.

[103] *Ondova Ltd. Co.*, 914 F.3d at 993 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[104] *Iqbal*, 556 U.S. at 679.

[105] *Id.* at 678.

[106] *Twombly*, 550 U.S. at 555.

[107] *See* Bankruptcy Case Docket Nos. 549 and 564.

the Removed Lawsuit from State Court was improper and that this Court lacks jurisdiction to address any of the Subject Claims – the same arguments made by the Debtor in her Timeliness and Jurisdiction Motions for remand.  Because the Court has already rejected each of these arguments in the Remand Opinion, the Court will not address them again herein, instead simply incorporating by reference the Court's reasoning from the Remand Opinion.  Second, the Debtor asserts that the Subject Claims are not barred by the *Barton* doctrine because they fall within the *ultra vires* exception to the *Barton* doctrine.  For reasons that follow, the Court disagrees.

In *Barton v. Barbour*,[108] the Supreme Court held that before suit may be brought against a court-appointed receiver in a forum other than the appointing court for actions taken in connection with the receiver's administration of the receivership estate, leave of the appointing court must be obtained.[109]  This same principle has been applied to both bankruptcy trustees and court-approved professionals employed by a bankruptcy trustee, such that leave of the bankruptcy court must be obtained before suit may be commenced against any of these estate fiduciaries in a forum other than the bankruptcy court for actions taken by them in connection with administering a bankruptcy case and bankruptcy estate.[110]  An exception to the doctrine has been recognized, however, where the receiver or estate fiduciary wrongfully takes possession of property that does not belong to the receivership or bankruptcy estate.  In that instance, where the action taken was outside of the authority conferred by order or statute and wrongful, and thus *ultra vires*, the wronged third party

---

[108] 104 U.S. 126 (1881).

[109] *Id.* at 128.

[110] *See Carroll v. Abide*, 788 F.3d 502, 505 (5th Cir. 2015); *Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir.), *cert. denied*, 136 S. Ct. 588 (2015); *Coen v. Stutz (In re CDC Corp.)*, 610 Fed. Appx. 918, 921 (11th Cir. 2015); *McDaniel v. Blust*, 668 F.3d 153, 156-57 (4th Cir. 2012); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006).

may pursue litigation against the receiver or estate fiduciary in his or her personal, as opposed to official, court-appointed or court-approved, capacity.[111]

Predicated upon the Debtor's belief that the Properties could never legally have become part of the bankruptcy estate, the Debtor claims that the Property Ownership Judgment, the Commercial Property Sale Order and the Powell Property Sale Order are all void orders of the Court due to the Court's alleged lack of subject matter jurisdiction to issue any orders with respect to the Properties.  Then, predicated upon her assertion that each of the orders involving the Properties is void, the Debtor claims that all of the actions taken by the Moving Defendants in administering the Properties consistent with such orders are assailable as *ultra vires* acts.  Taking it one step further, because the Moving Defendants were paid in the bankruptcy proceedings from proceeds of the sale of the Properties, then irrespective of the SLPC Fee Order and the Trustee Fee Order, the Debtor appears to take the position that she is also free to assert claims against the Moving Defendants for wrongful compensation based upon the Moving Defendants' alleged *ultra vires* acts in pursuing and obtaining such compensation.  Each of these arguments is utterly baseless.

First, the Debtor's underlying predicate conclusion that each of the Property Ownership Judgment, Commercial Property Sale Order and Powell Property Sale Order is void for lack of subject matter jurisdiction is faulty.  While it is true that a party to a proceeding is free at any stage of a proceeding, including during an appeal, to attack the court's authority to issue an order with respect to a contested claim for lack of subject matter jurisdiction, that right is not tantamount to a license to engage in endless collateral attacks of the order until the party gets the ruling that she

---

[111] *See Barton*, 104 U.S. at 134; *Baron v. Sherman (In re Ondova Ltd. Co.)*, U.S.D.C. No. 3:16-CV-00947-M, 2018 WL 580151, at *2 (N.D. Tex. Jan. 26, 2018), *aff'd*, 914 F.3d 990 (5th Cir. 2019).

wants.  As explained by the Supreme Court, "[e]ven [determinations of] subject-matter jurisdiction … may not be attacked collaterally."[112]

Here, the Debtor has previously, on multiple occasions, had the opportunity to challenge the Court's determinations with respect to both the bankruptcy estate's ownership interest of the Properties and the Court's subject matter jurisdiction over proceedings involving the Properties. In fact, the Debtor has previously challenged such determinations on the exact same grounds as set forth in the Current Complaint and Objection.[113]   Similarly, the Debtor has already either directly attacked or had the opportunity to directly attack the actions of the Moving Defendants in administering the bankruptcy estate and in seeking compensation in relation thereto as part of the proceedings instituted with the filing of SLPC's and the Trustee's final fee applications in the Bankruptcy Case and with the filing of the Trustee's Proposed Final Distribution Report.  Those proceedings concluded with the entry of the SLPC Fee Order (which the Debtor unsuccessfully appealed), the Trustee Fee Order and the Final Distribution and Discharge Order.  Thus, because the Debtor's underlying predicate conclusion with respect to the invalidity of the above-referenced orders of the Court is faulty, so is her characterization of the Moving Defendants' actions as *ultra vires* acts.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[114]

Even so, perhaps most relevant to the consideration of the Debtor's *ultra vires* assertions is the fact that all of the Moving Defendants' actions were taken in accordance with, in furtherance

---

[112] *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004)).

[113] For example, the Debtor has made the same or substantially similar assertions and arguments in connection with the proceedings that ultimately concluded in the Court's issuance of the Commercial Property Sale Order, the Powell Property Sale Order and the Judgment Vacatur Denial Order.

[114] *Papasan*, 478 U.S. at 286.

of, in reliance upon, or consistent with orders of this Court, irrespective of the Debtor's attack of the orders. In other words, there was nothing *ultra vires* about the Moving Defendants' actions at all. Indeed, nowhere within the Current Complaint is there a single reference to the term "*ultra vires*." Instead, as illustrated by the following language from the Current Complaint, the Debtor goes to great strides to actually highlight the official capacity in which the Moving Defendants took action:

- "Defendant, Areya Holder is an individual acting under the color of law as a contract employee of the United States Trustee Program for the US Department of Justice as the chapter 7 panel trustee assigned pursuant to 11 USC 704 to the matter styled in re Regina Nachael Howell Foster, and numbered 12-43804-RFN-7." (page 2, ¶ 2)

- "Defendant, Singer Levick, P.C., is a Texas corporation, acting under the color of law as a contract employee legal counsel of appointed Chapter 7 Panel Trustee of the United States Trustee Program for the US Department of Justice…." (page 2, ¶ 3)

- "Defendant, Todd A. Hoodenpyle, an individual, licensed attorney and individual employee of Singer Levick, P.C., who at all times acted under the color of law in the course of his employment for Singer Levick, P.C. as the counsel retained to represent the appointed chapter 7 panel trustee pursuant to 11 USC 327 to the matter styled in re Regina Nachael Howell Foster, and numbered 12-43804-RFN-7." (page 3, ¶ 4)

- "Defendant, Michelle E. Shriro, is a licensed attorney an individual employee of Singer Levick, P.C., who at all times acted under the color of law in the course of his [sic] employment for Singer Levick, P.C. as the counsel retained to represent the appointed chapter 7 panel trustee pursuant to 11 USC 326 [sic] to the matter styled in re Regina Nachael Howell Foster, and numbered 12-43804-RFN-7." (page 3, ¶ 5)

- "Defendant, Areya Holder, as an appointed Chapter 7 panel Trustee and Defendant Singer Levick, acting by and through, defendant Michelle Shiroo [sic] and/or Todd Hoodenpyle, as appointed counsel for the Chapter 7 Panel trustee, as public servants under the purported authority 11 USC 704 and 11 USC 327 did knowingly conspire to commit an offense…." (pages 15 and 16, ¶¶ 21 and 22)

Thus, the Debtor's pivot in the Objection to now argue *ultra vires* conduct on the part of the Moving Defendants is patently frivolous.

Accordingly, because the Debtor has failed in the Current Complaint to set forth any *ultra vires*, individual liability claims, much less any <u>plausible</u> *ultra vires*, individual liability claims, against any of the Moving Defendants, and because the Debtor did not obtain leave of court to pursue any of the Subject Claims against any of the Moving Defendants in State Court, then this action, insofar as involving the Subject Claims, lacks all legitimacy and will be dismissed for violation of the *Barton* doctrine.

## C.    *Dismissal on Immunity Grounds*

Relying upon the Fifth Circuit's recent opinion in *Baron v. Sherman (In re Ondova Ltd. Co.)*,[115] the Moving Defendants additionally assert that the Subject Claims are barred by applicable doctrines of immunity.  The Debtor fails to directly address this assertion at all in the Objection.

As explained in *Ondova Ltd. Co.*, there are differing types of immunity that come into play to protect a trustee and her court-approved counsel in administering a bankruptcy case and bankruptcy estate.  First, a bankruptcy trustee is "entitled to absolute immunity for all actions taken pursuant to a court order[.]"[116]  Second, a bankruptcy trustee is "entitled to qualified immunity for personal harms caused by actions that, while not pursuant to court order, fall within the scope of [the trustee's] official duties."[117]   Finally, in the case of the bankruptcy trustee's attorneys employed with court approval, the trustee's immunity "extends to [the trustee's] attorneys under both a derivative theory of judicial immunity and under the separate doctrine of attorney immunity[.]"[118]

---

[115] 914 F.3d 990 (5th Cir. 2019).

[116] *Id*. at 993.

[117] *Id*.

[118] *Id*. at 994 (citing *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 349 (5th Cir. 2016) and *Allard v. Weitzman (n re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

Here, all of the complained of actions of the Trustee alleged in the Current Complaint were taken by the Trustee either pursuant to express order of the Court (*i.e.* the Property Ownership Judgment, the Commercial Property Sale Order, the Powell Property Sale Order, the SLPC Fee Order, the Trustee Fee Order and/or the Final Distribution and Discharge Order) or in performing her official duties as a chapter 7 trustee (*e.g.*, intervening in the Divorce Action to put the Family Court on notice of the Bankruptcy Case and of the bankruptcy estate's asserted interest in the Properties).[119] Therefore, all of the Subject Claims asserted against the Trustee are barred by either absolute or qualified immunity. "Only *ultra vires* actions – actions that fall outside the scope of [the trustee's] duties as trustee[ ] – are not entitled to immunity."[120] And as previously indicated, the Debtor has not plausibly alleged any *ultra vires* conduct on the part of the Trustee.

Turning next to the Trustee's court-approved counsel, as asserted in the Current Complaint, all of the complained of actions of SLPC, Hoodenpyle and Shriro alleged in the Current Complaint involved the provision of legal services to or for the benefit of the Trustee taken in their capacity as counsel for the Trustee. Therefore, all of the Subject Claims asserted against SLPC, Hoodenpyle and Shriro are barred by either a derivative application of the judicial immunity enjoyed by the Trustee or by attorney immunity.

Thus, because the Debtor has failed to plausibly allege facts sufficient to state a basis for relief against any of the Moving Defendants in the face of the above described immunity doctrines, the Subject Claims will also be dismissed on the basis of immunity.

---

[119] *See, e.g.*, 11 U.S.C. §§ 323(a) ("The trustee in a case under this title is the representative of the estate"), 323(b) ("The trustee in a case under this title has capacity to sue"), 704(a)(1) ("The trustee shall … collect and reduce to money the property of the estate").

[120] *Ondova Ltd. Co.*, 914 F.3d at 993.

D.      *Dismissal on Res Judicata Grounds*

Finally, the Moving Defendants also assert that the Subject Claims should be dismissed on *res judicata* grounds. In particular, highlighting the fact that each of the Subject Claims is predicated and dependent upon the alleged voidness of the Court's prior orders addressing the Properties, the Moving Defendants assert that each of the Subject Claims is subject to dismissal because the Court's prior orders are entitled to *res judicata* effect. In response, the Debtor asserts that *res judicata* is an affirmative defense that must be plead as such in a defendant's answer pursuant to Federal Rule 8(c).[121] Thus, because the Moving Defendants have not yet answered the Current Complaint and affirmatively plead the defense of *res judicata*, the Debtor asserts that the Court may not consider the defense.

"Although *res judicata* generally cannot be raised in a motion to dismiss and should instead 'be pleaded as an affirmative defense,' dismissal under Rule 12(b)(6) is appropriate if the *res judicata* bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense."[122] Here, while the *res judicata* bar is apparent from the Current Complaint and judicially noticed facts, the Debtor has challenged application of the defense based upon the Moving Defendants' failure to specifically plead it as such in answer to the Current Complaint. Recognizing, of course, that the Moving Defendants have not yet technically failed to plead the *res judicata* defense, inasmuch as the

---

[121] *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … res judicata …."); Fed. R. Bankr. P. 7008 (providing for the application of Federal Rule 8 to adversary proceedings); *see also Arizona v. California*, 530 U.S. 392, 410 (2000) (recognizing *res judicata* as an affirmative defense that may be lost if not timely raised).

[122] *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (citing *Test Masters Educ. Servs.*, 428 F.3d at 570 n.2).

deadline to answer has not yet passed,[123] because the Moving Defendants have not technically pled the *res judicata* defense in answer to the Current Complaint, ostensibly it is inappropriate for the Court to consider *res judicata* as a basis for dismissal under Federal Rule 12(b)(6).

Ultimately, while there is additional case law suggesting that certain exceptions exist to the general rule that *res judicata* should not be considered at the dismissal stage in the face of an objection,[124] it is unnecessary for the Court to consider the applicability of any exceptions given that dismissal has already been shown to be warranted under the alternative grounds of violation of the *Barton* doctrine and immunity. Therefore, the Court declines to consider dismissal on *res judicata* grounds.

## *CONCLUSION*

For the reasons set forth above, the Court finds that the Current Complaint fails to contain sufficient factual allegations in support of the Subject Claims to state a claim to relief that is plausible on its face against any of the Moving Defendants. Therefore, the Court will grant the Motion to Dismiss. A separate order providing for such dismissal will be issued by the Court.

### # # # END OF MEMORANDUM OPINION # # #

---

[123] *See* Fed. R. Bankr. P. 7012(a) (providing for a 14-day period to answer the complaint after denial of a Federal Rule 12(b) motion to dismiss if the Federal Rule 12(b) motion to dismiss has been presented before the filing of an answer).

[124] *See, e.g., Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 281 (5th Cir. 2001) ("Generally, res judicata is an affirmative defense that must be pleaded, not raised *sua sponte*. We recognize two limited exceptions to this rule; both apply here. The first exception allows '[d]ismissal by the court sua sponte on res judicata grounds … in the interest of judicial economy where both actions were brought before the same court.'…. The second exception holds that 'where all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention by technically correct and exact pleadings.'") (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) and *American Furniture Co. v. International Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A Mar. 1981)), *cert. denied*, 535 U.S. 1055 (2002); *see also McIntyre v. Ben E. Keith Co.*, 754 Fed. Appx. 262, 264-65 (5th Cir. 2018).